# Richmond.

## THOMAS MARSHALL v. COMMONWEALTH.

November 13, 1924.

1. APPEAL AND ERROR—*Criminal Cases—Accused Stands as on a Demurrer to the Evidence.*—On appeal of a criminal case the accused stands practically as on a demurrer to the evidence.

2. SEARCHES AND SEIZURES—*Intoxicating Liquors—Officers should be Careful that no Abuse Follows the Execution of a Search Warrant.*—Until the passage of the prohibition law, the use of search warrants was a rare occurrence, except when employed most usually to obtain the fruits of the crime of larceny. That search warrants are essential to a proper enforcement of the prohibition laws of the State cannot be gainsaid. But in their use, the officers to whom the same are entrusted should be most careful to see that no abuse follows the execution thereof, lest the law which they are most instrumental in upholding should fall into disrepute. To justify the act, an officer, in invading the confines of a citizen's home, must be in a position to show that such an intrusion is warranted by law equally as authoritative as the law he is seeking to enforce.

3. OBSTRUCTING JUSTICE—*Search Warrants—Regularity of Warrant.*—Before one can be convicted of obstructing, hindering, or resisting an officer in the execution of a search warrant a warrant must be issued, by a proper officer, which does not infringe upon the constitutional rights of the individual to be affected by its issuance and use.

4. SEARCHES AND SEIZURES—*Obstructing Justice—Hindering Execution of Search Warrant—Production of the Warrant—Case at Bar.*—In the instant case a prosecution for obstructing, hindering or resisting an officer in the execution of a search warrant the contents of the search warrant was the essence of its validity. It was the "best evidence" as to the lawful act of the officer. This evidence the accused had a legal right to demand of the Commonwealth that she produce, or else account, as required by law, for the nonproduction thereof.

5. BEST AND SECONDARY EVIDENCE—*Lost Instruments and Records—Foundation for Introduction of Secondary Evidence.*—In order to warrant the introduction of secondary evidence as to the terms of a written instrument, it must be first shown by satisfactory proof that the original instrument has been lost or destroyed, or that it is beyond

the jurisdiction of the court, or in the possession of the adverse party, who refuses to produce it.

6. LOST INSTRUMENTS AND RECORDS—*Introduction of Secondary Evidence—Diligent Search for the Original.*—If the basis upon which the secondary evidence is sought to be introduced is that the instrument is lost (as in this case), there must be proof that a diligent search has been made in the place where it is most likely to be found and that the search has been unsuccessful. As to what constitutes a diligent search is left to the discretion of the trial court, and this discretion will not be interfered with by the appellate court except in cases of flagrant abuse of this prerogative.

7. OBSTRUCTING JUSTICE—*Impeding Execution of Search Warrant—Lost Instruments and Records—Introduction of Copy of Search Warrant—Case at Bar.*—In the instant case, a prosecution for obstructing, hindering or resisting an officer in the execution of a search warrant, it was contended by the prosecution that the original search warrant was lost and that therefore a blank form similar to the form of the search warrant in question was admissible to evidence; however, the evidence, instead of establishing the loss of the warrant, demonstrated that the warrant would be found in all probability in the possession of the magistrate who conducted the preliminary hearing.

*Held:* That though perhaps inconvenient, the magistrate should have been called as a witness.

8. LOST INSTRUMENTS AND RECORDS—*Introduction of Secondary Evidence—Testimony of the Last Custodian.*—Where it is sought to introduce secondary evidence of, and to the contents of, a lost instrument the testimony of the last custodian of the paper or record should be produced.

9. LOST INSTRUMENTS AND RECORDS—*Introduction of Secondary Evidence—Copies—Similarity—Case at Bar.*—In the instant case, a prosecution for obstructing, hindering or resisting an officer in the execution of a search warrant, the Commonwealth, instead of introducing the warrant itself in evidence, introduced a blank form "exactly similar to the search warrant."

*Held:* That similarity will not suffice. Before a copy may be introduced in evidence it must be shown that the copy is a correct copy.

10. BEST AND SECONDARY EVIDENCE—*Caution in Admitting Secondary Evidence.*—Courts should be cautious in admitting the introduction of secondary evidence.

11. BEST AND SECONDARY EVIDENCE—*Search Warrant—Obstructing Justice—Case at Bar.*—In the instant case, a prosecution for obstructing an officer in the execution of a search warrant, the indictment alleged that the warrant was issued by one magistrate while a witness testified that it was issued by another. This conflict between the

*allegata et probata* raised a serious question as to the identity of the warrant in the hands of the officers at the time of the search.

*Held:* That secondary evidence of the contents of the warrant was inadmissible, as the best mode of ascertaining the true condition was the production of the warrant itself—if obtainable.

12. SEARCHES AND SEIZURES—*Constitutionality of Search Warrant—Warrant not Produced in Court—Moot Question.*—In a prosecution for obstructing an officer in the execution of a search warrant where the Supreme Court of Appeals held that the lower court erred in allowing the introduction of a blank form similar to the form of the search warrant in question instead of the warrant itself, a discussion of the constitutionality of the warrant would be but the discussion of a moot question.

13. SEARCHES AND SEIZURES—*Search Warrant—Sufficiency of Affidavit—Case at Bar.*—An affidavit for a search warrant stated that complainant believed that intoxicating liquors were being unlawfully manufactured, sold, etc., in the dwelling house of accused and also stated that affiant based this belief upon the complaints of citizens, whose names affiant did not have to divulge. The affidavit specifically named the dwelling house of the accused, and that the thing to be sought for was ardent spirits.

*Held:* That the affidavit was sufficient.

14. INTOXICATING LIQUORS—*Search Warrant—Affidavit—Sufficiency of Evidence for Issuance of Warrant.*—The evidence on which the issuance of a search warrant is based, under the 1920 and 1918 statutes, does not have to be sufficient to establish the fact that the thing sought is on the premises, but merely that the belief of the person making the affidavit that it is there is based on facts which furnish a probable or reasonable cause for such belief.

15. INTOXICATING LIQUORS—*Argument of Counsel—Argument Held not to Warrant a Reversal—Case at Bar.*—In a prosecution for resisting an officer in the execution of a search warrant, the Commonwealth's attorney during argument stated that it was necessary to put a stop to the resistance of prohibition officers and referred to an officer recently killed.

*Held:* That while the language used rested on the "border line" it was not such a breach of the fair argument rule as would warrant a reversal if it were the only error assigned.

16. APPEAL AND ERROR—*Argument of Counsel—When Matter for Reversal.*—Courts ought not to reverse cases because counsel, in the heat of argument, sometimes wander a little way outside the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict.

17. OBSTRUCTING JUSTICE—*Intoxicating Liquors—Punishment.*—In the in-

stant case, a prosecution for obstructing an officer in view of the indictment, which demonstrated that the scrivener who drew it had in mind section 23½ of the prohibition act, punishment, if accused was found guilty, was fixed by section 5 of the prohibition act and not by section 55C of that act (Acts of 1918, chapter 388), and under Acts of 1924, chapter 407, section. 49, the punishment for obstructing an officer in the enforcement of the prohibition laws is the same as that fixed by section 5 of the former law.

18. APPEAL AND ERROR—*Remand for New Trial—Opinion of Appellate Court as to whether the Verdict was Contrary to the Evidence.*—When, upon other grounds, a case is remanded by the Supreme Court of Appeals for a new trial, that court will not express any opinion as to the merit or demerit of an assignment of error relating to the refusal of the trial court to set aside the verdict of the jury as contrary to the law and the evidence.

Error to a judgment of the Circuit Court of Rockingham county.

*Reversed.*

The opinion states the case.

*E. D. Ott*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The plaintiff in error and Minnie Marshall were arraigned and tried upon an indictment charging that they "did unlawfully knowingly resist, impede, and obstruct, and otherwise hinder and delay officers W. T. Rexrode, John S. Funk and John Dove in the execution of a search warrant for ardent spirits by destroying ardent spirits, closing door and holding officer W. T. Rexrode; said warrant having been issued by J. W. Keiter, a justice of the peace for Rockingham county, Virginia, who had the right to issue the same, against

the peace and dignity of the Commonwealth of Virginia." The plaintiff in error was convicted and Minnie Marshall, his wife, was acquitted.

The evidence to sustain the verdict of the jury may be thus summarized:

W. T. Rexrode, a State prohibition officer, in company with J. L. Dirting and J. S. Funk, Federal prohibition officers, and John Dove, deputy sheriff of the county, went to the home of the accused on the afternoon of the 15th of March, 1924, to execute a purported search warrant for ardent spirits issued, as claimed, by F. J. Argenbright, a justice of the peace, on the purported affidavit of J. L. Dirting; that they were met at the door by the accused, who invited them in; that Rexrode told the accused that he had a warrant to search his house, and upon request of accused to have the warrant read the same was handed to Funk with the request that he read it to accused; that Funk had read only a few words when Minnie Marshall, wife of accused, who was standing in the room, turned and ran toward the stairway leading to the second story of the house; that Rexrode called to her to come back and not go upstairs, but she continued her course and ran up the stairway and into a room; that Rexrode followed her up the stairway to the door of the room which he found closed; that he called upon her to open the door, which she refused to do, whereupon he forced the door open; that the accused followed Rexrode upstairs, came up behind him and caught him around the body with his arms and held him securely; that while he was so held Mrs. Marshall emptied a jar containing whiskey, either turned it over with her foot or emptied it with her hand; that while Rexrode was thus held by accused, Funk, who had followed the accused, came up and took hold of accused and told him to let go of Rexrode, which he did; that the whiskey was poured out before Rexrode

was released; that Mrs. Marshall left the room upstairs and went below where Dove and Dirting were using a vessel to catch the liquor which came through the floor in a stream about as large as a wheat straw; that Mrs. Marshall tried to prevent them from catching the liquor; that Dirting told Mrs. Marshall she was under arrest and pushed her down in a chair; that a child began to cry, whereupon the accused picked up a gun standing in the corner; that upon being told by Funk that no harm should come to any of his family, he put the gun back in the corner; that the gun was in the room upstairs.

The greater portion of this evidence is contradicted by the accused and his wife.

No evidence was offered by the Commonwealth as to the general reputation of the accused as a violator of the prohibition law. The accused, however, proved by Charles Cline, George Ritchie, W. P. Driver, a justice of the peace, and Dr. C. H. Ralston, a former member of the General Assembly of Virginia, that his reputation for truth was good, and that he also bore the reputation of not being a violator of the prohibition law. It was further proved that the accused was an employee of the Southern Railway Company, and on the day this occurrence took place was at home sick.

[1] As the accused stands in this court practically as on a demurrer to the evidence, it is not essential to further detail the evidence upon the part of the accused.

This brings us to a consideration of the first assignment of error, viz: That during the trial of the case officer W. T. Rexrode testified that he did not have the warrant under which the search was made, that he supposed that it was in the possession of Magistrate F. J. Argenbright, who issued it, or in the possession of the attorney for the Commonwealth.

Counsel for the accused objected to the introduction of any evidence as to what was done under the authority of the warrant or as to the contents of the warrant until it was first shown that diligent search had been made for the original search warrant and that the same was either lost or destroyed.

The trial court overruled the objection of counsel for the accused and permitted the Commonwealth to introduce in lieu of the original warrant a blank form similar to the form of the search warrant, and further permitted the witness to testify orally as to the contents of the search warrant used in making a search of the mansion house of the accused.   The form introduced was as follows:

"Commonwealth of Virginia, city, county of Rockingham, to-wit:

"To the prohibition inspectors, sheriffs, sergeants, and all police officers and constables of the State of Virginia—Greeting:

"Whereas_____of the said county has this day made complaint and information on oath before me,_____of the said county that he verily believes, that in the said county and State:

"(a) That ardent spirits are being unlawfully manufactured, sold, kept, stored, possessed, held, used, and concealed in a certain _____by one

_____.

"(b) A still, still cap, worm, tubs, fermenters, and other appliances connected with such still and used, and mash and other substances, capable of being used, in the manufacture of ardent spirits, are unlawfully in the possession of, and unlawfully used by one_____in a certain_____.

"(c) Ardent spirits are being unlawfully kept, held, stored, concealed, used, sold, and unlawfully transported

in certain baggage or a certain vehicle, to-wit:  a certain
_____by one_____.
And there being reasonable cause for such belief.

"These are, therefore, in the name of the Common-
wealth of Virginia, to command you, with all necessary
and proper speed and assistance, to search the house,
place, baggage, boat, or vehicle herein designated,
either in day or night, and seize such ardent spirits and
their containers and other things apparently possessed
or used in violation of law, and bring the same and the
person or persons, in whose possession they are found,
and also any person resisting, impeding, obstructing,
or in any manner hindering or delaying you in the exe-
cution of this warrant, before me, or some other officer
having jurisdiction of the case, to be disposed of and
dealt with according to law; and make return of this
warrant showing all acts and things done thereunder
with a particular statement and sufficient description
of the things seized and the name of the person in whose
possession found, if any, and if not found in the posses-
sion of any one, so state in your return, and post a true
copy of this warrant and the return thereof, as required
by law.

"Given under my hand and seal this_____day of
_____, 1920.

_____(Seal)"

In our opinion this assignment of error is well taken.

[2] Until the passage of the prohibition law the use of
search warrants was a rare occurrence, except when
employed most usually to obtain the fruits of the crime
of larceny.   That search warrants are essential to a
proper enforcement of the prohibition laws of the State
cannot be gainsaid.   But in their use the officers to
whom the same are entrusted should be most careful to
see that no abuse follows the execution thereof, lest the

law which they are most instrumental in upholding should fall into disrepute. To justify the act, an officer, in invading the confines of a citizen's home, must be in a position to show that such an intrusion is warranted by law equally as authoritative as the law he is seeking to enforce.

[3, 5] By section 10 of the Constitution of Virginia it is provided: "That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

It is thus seen that before an accused could be convicted of such an offense as is charged in the indictment, a warrant must be issued, by a proper officer, which does not infringe upon the constitutional rights of the individual to be affected by its issuance and use. In the instant case, the contents of the search warrant was the essence of its validity. It was the "best evidence" as to the lawful act of the officer. This evidence the accused had a legal right to demand of the Commonwealth that she produce, or else account as required by law for the nonproduction thereof. In order to warrant the introduction of secondary evidence as to the terms of a written instrument, it must be first shown by satisfactory proof that the original instrument has been lost or destroyed, or that it is beyond the jurisdiction of the court or in the possession of the adverse party who refuses to produce it. *Lunsford* v. *Smith*, 12 Gratt. (53 Va.) 554; Jones on Evidence (2d ed.), section 212, and authorities cited.

[6] If the basis upon which the secondary evidence is sought to be introduced is that the instrument is lost

(as in this case), there must be proof that a diligent search has been made in the place where it is most likely to be found and that the search has been unsuccessful. As to what constitutes a diligent search is left to the discretion of the trial court, and this discretion will not be interfered with by the appellate court except in cases of flagrant abuse of this prerogative.

[7, 8] In the brief of the Attorney-General, it is stated that the warrant was lost. This statement is not borne out by the record. Under the title "certificate No. 1," page 19 of the record, appears the following:

"The witness (Rexrode) being called upon by counsel for defendants to produce the search warrant, said he did not have it, that the last time he saw it was at the preliminary hearing; that he supposed it was in the possession of magistrate F. J. Argenbright, who issued it, or in the possession of Mr. Earman, attorney for the Commonwealth. Mr. Earman stated that it was not in his possession and he did not know where it was, and J. F. Blackburn, clerk of the court, being *inquired of*, said the warrant was not in his office."

This is all the evidence as to the search warrant being lost. Instead of this inquiry being conclusive of the loss of the warrant, it demonstrated that the warrant would be found in all probability in the possession of Argenbright, the magistrate who conducted the preliminary hearing. Though perhaps inconvenient, Argenbright should have been called as a witness.

"The testimony of the last custodian of the paper or record should be produced." *Judson* v. *Eslava*, Minor (Ala.) 71, 12 Am. Dec. 32, and note.

[9] As an excuse for the introduction of the form of warrant it might be contended that it was "exactly similar to the search warrant." Similarity will not suffice. In any event, before a copy may be introduced in

evidence, it must be shown that the copy is a correct copy.

The reason why this salutary rule as to the production of the "best evidence" should not be relaxed is obvious.   "If copies are to be used, there is the possibility, often the strong probability, of error in copying.   If the memory is relied on for the reproduction in court of written instruments, mistake is almost certain and in important documents the change of a word or phrase might result in great injustice."   Jones on Evidence, section 119.

[10, 11] The instant case clearly exemplifies that courts should be cautious in permitting the introduction of secondary evidence.   An inspection of the indictment, *supra,* reveals the fact that it is alleged therein that the search warrant, authorizing a search of the dwelling of the accused, was issued "by J. W. Keiter, a justice of the peace for Rockingham county, Virginia, who had the right to issue the same;" while the testimony of W. T. Rexrode is that the warrant was issued by magistrate F. J. Argenbright.   Upon this testimony, the trial court instructed the jury as follows:

"The court instructs the jury that if the defendants, or either of them, knowingly resisted, impeded, or obstructed, or in any manner hindered or delayed officers R. T. Rexrode, John Funk or John Dove, or either of them, while they had in their hands a search warrant issued by F. J. Argenbright, J. P., you will find them guilty."

This conflict between the *allegata et probata* raises a serious question as to the identity of the warrant in the hands of the officers at the time of the search.   Whether the allegation of the indictment, the testimony of the witness, or the instruction of the court is the correct solution of who issued the warrant, it is impossible to

tell. The best mode of ascertaining the true condition is the production of the warrant itself—if obtainable.

[12] The second and third assignments of error deal with the form and introduction of the blank search warrant and with the affidavit upon which the search warrant in question was issued. It is contended by the accused that the affidavit upon which the warrant was based is void, because not in accord with the law as contained in chapter 345, Acts of Assembly 1920, page 516, "in that it did not allege the things to be searched for thereunder, the material facts constituting the probable cause for the issuance of such warrant and the offense in relation to which the search is to be made, and therefore the warrant issued pursuant thereto is unconstitutional."

Taking up the question of the constitutionality of the warrant, it is sufficient to observe that a discussion of the warrant in question in view of what has been said as to the identity of the same would be but the discussion of a moot question.

[13] Coming now to the disposition of the question of the validity of the affidavit, we are of the opinion there is no merit in this assignment of error.

This affidavit, among other things, sets forth that "whereas, J. L. Dirting, chief Federal agent of said county, has this day made complaint and information on oath before me, F. J. Argenbright, J. P., * * that he verily believes for the reasons hereinafter stated * * (a) Ardent spirits are being unlawfully manufactured, sold, kept, stored, possessed, held, used, and concealed, in a certain dwelling house and out buildings by one Tom Marshall, located at Mt. Clinton.

"And there being reasonable and probable cause for such belief, on account of the following facts stated by

the affiant and others, to-wit, upon information and complaint of citizens.   *   *"

The affidavit states that it is based on the complaint of divers citizens, whose names affiant under the law as laid down in *Webb's Case*, 137 Va. 833, 120 S. E. 155, did not have to divulge.   It specifically names the dwelling house of the accused and that the thing to be sought for is ardent spirits.

[14] In *Zimmerman's Case*, 134 Va. 787, 115 S. E. 362, Sims, P., delivering the opinion of the court, held that the evidence on which the issuance of a search warrant is based, under the 1920 and 1918 statutes aforesaid, does not have to be sufficient to establish the fact that the thing sought is on the premises, but merely that the belief of the person making the affidavit that it is there is based on facts which furnish a probable or reasonable cause for such belief.

[15] The fourth assignment of error is that "during the argument of the Commonwealth's attorney he stated that it was necessary to put a stop to the resistance of prohibition officers by private persons, that only recently had McManaway been killed at Covington, Va."

The fact that McManaway had been killed had nothing to do with the merits of the case under trial. The language used, while resting on the "border line," does not fall within the rule laid down in *Jessee's Case*, 112 Va. 895, 71 S. E. 612; *Mullins' Case*, 113 Va. 787, 75 S. E. 193, and *McCoy's Case*, 125 Va. 771, 99 S. E. 644, and is not such a breach of the "fair argument rule" as would warrant a reversal of the case if this were the only error assigned.

[16] In *Seay's Case*, 135 Va. 737, 115 S. E. 574, Sims, P., quotes with approval from the opinion of Elliott, J., in *Combs* v. *State*, 75 Ind. 215, as follows:   "Courts

ought not to reverse cases because counsel in the heat of argument, sometimes  *  *  wander a little way outside the record.   If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict.   If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else."

This assignment of error is without merit.

The fifth assignment of error draws in question the refusal of certain instructions asked for by the accused. Upon a careful reading of these instructions we do not think the court erred in refusing to so instruct the jury in the case under trial.   The elements embodied in the instruction challenges the validity of the search warrant, which is not before us, therefore we do not deem it pertinent to quote the instructions or deal with them at any greater length.

[17] The sixth assignment of error challenges the correctness of the charge given by the clerk to the jury on the question of punishment.

The jury were charged that in the event they found the accused guilty, as charged in the indictment, the punishment applicable thereto was a fine of not less than $100.00 nor more than $1,000.00, and confinement in jail not less than two nor more than six months; whereupon the accused by counsel moved the court to charge the jury that if he should be found guilty, the punishment prescribed by law was not less than $50.00 nor more than $500.00 and confinement in jail not less than one nor more than six months, which motion the court overruled.

We are of the opinion that this assignment of error is

well founded. Evidently the learned judge who presided at the trial of this case considered that the accused might be punished under section 55c of the prohibition law (Acts 1918, chapter 388), which provides: "Any person who shall hinder or obstruct any officer of this State charged with the duty of inspecting baggage for ardent spirits, or the duty of ascertaining whether any ardent spirits is being illegally transported or stored, or otherwise charged with the duty of enforcing the provisions of this act, shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined not less than $100.00 nor more than $1,000.00, and be confined in jail not less than two nor more than six months."

A careful study of the indictment clearly demonstrates to our mind that the scrivener who drew the indictment had in mind the provisions of section 23½ of the prohibition law, which is as follows: "It shall be unlawful for any person knowingly to resist, impede, or obstruct, or in any manner to hinder, or delay any legal officer having in his hands any search warrant issued by any officer of this State having the right to issue the same, under the provisions of this act, in the execution of such warrant. Any person so resisting, impeding, obstructing or in any way hindering or delaying any officer in the execution of a legal warrant in his hands shall be guilty of a misdemeanor."

The punishment for a misdemeanor under the prohibition act, where no other punishment is prescribed, is that found in section 5, which reads as follows: "Any person who shall violate any of the provisions of this act shall, except as otherwise herein provided, be deemed guilty of a misdemeanor and pay a fine of not less than $50.00 nor more than $500.00 and be confined in jail not less than one nor more than six months."

In the conclusion that if the accused was amenable to punishment he should have been punished under the provisions of section 5, we are supported by the action of the General Assembly, session of 1924 (laws 1924, chapter 407), in so amending the prohibition law that both sections 23½ and 55c have been omitted from the law as it now exists and in lieu thereof appears section 49, which provides that "it shall be unlawful for any person to obstruct the lawful exercises of the duties of any officer charged by law with the enforcement of the prohibition laws. * *" The punishment provided for a violation of this section is found in section 6, Acts 1924, and is the same as fixed in the section carried in the former law as section 5.

[18] The last assignment of error relates to the refusal of the trial court to set aside the verdict of the jury as contrary to the law and the evidence. As the case must be remanded for a new trial, we refrain from expressing any opinion as to the merit or demerit of this assignment of error.

The judgment complained of, for the reasons above stated, will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*