# Staunton.

## William Spencer v. Commonwealth.

### September 17, 1925.

1. Homicide—*Instruction Defining Murder—Words of the Statute—Degrees of Murder.*—An instruction giving the statutory definition of murder in the first and second degrees, using the very language of the statute, could not have misled the jury, and was not prejudicial error.

2. Arguments of Counsel—*Criminal Cases—Improper Argument—Proper Course to be Followed—Reversal on Appeal.*—In a prosecution for murder, the assistant prosecuting attorney used in argument intemperate and inflammatory language. Upon objection being made to the language so used, the court promptly instructed the jury to disregard the statements and that they should be in no way influenced by them. There was no further motion by defendant. The proper procedure would have been to move the court to set aside the verdict of the jury and grant the prisoner a new trial, or to discharge the jury and grant the prisoner a new trial. Notwithstanding this procedure was not followed, if upon the whole case it had appeared to the Supreme Court of Appeals that the accused was prejudiced by the language used and did not have a fair trial, that court would have reversed the case and remanded it for a new trial.

3. Arguments of Counsel—*New Trial—When Allowed.*—A new trial may be allowed where the court has failed or refused to properly check improper remarks or argument of counsel, or to properly instruct the jury thereon, but the statements must be fairly calculated to improperly influence the jury.

4. Arguments of Counsel—*New Trial—When Allowed—Direction to Disregard.*—There are cases in which the effect of statements of counsel cannot be adequately overcome by direction to the jury to disregard the objectionable statements, and in such cases a new trial should be granted.

5. Arguments of Counsel—*New Trial—Statements Calculated to Influence the Jury—Direction to Disregard Statements.*—Whether improper statements in argument of counsel were fairly calculated to improperly influence the jury, notwithstanding an instruction of the court to disregard them, cannot be determined by an examination of the statements alone. The question as to whether language used is prejudicial depends also upon the facts of the particular case.

6. Arguments of Counsel—*Criminal Cases—New Trial—Verdict the Only One that Could Have Been Arrived at.*—If in the trial of a criminal case the evidence is such that reasonable men could not disagree as to the guilt of the accused, and further, if the enormity of the crime is such that only the highest penalty prescribed by law will meet the ends of justice, a case is presented in which, while it would not justify the use of inflammatory language in argument, the use of such language would not prejudice the accused, as it might well do in a case where the guilt of the accused was not so certainly established, and where it may be a debatable question as to the grade of punishment which should be meted out.

7. Arguments of Counsel—*Criminal Cases—New Trial—Verdict the Only One that Could Have Been Arrived at—Case at Bar.*—In the instant case while the remarks of the assistant attorney for the Commonwealth did not amount to indulgence in inferences not supported by the evidence, they were of an inflammatory nature, calculated to arouse prejudice and passion. A proper rebuke was administered by the presiding judge, and but for the fact that the result would inevitably have been the same, if the assistant prosecuting attorney had not addressed the jury at all, the Supreme Court of Appeals would have felt constrained to reverse the case.

8. Arguments of Counsel—*Inflammatory, Abusive, Extravagant and Intemperate Language—Fine or Imprisonment.*—Trial courts are fully competent to protect themselves against the use of inflammatory, abusive, extravagant and intemperate language in argument of counsel by fining or, in aggravated cases and when the offense is persisted in, even by imprisoning offenders.

9. Arguments of Counsel—*Criminal Cases—No other Result Possible—Case at Bar.*—In the instant case, a prosecution for murder, the evidence, although circumstantial, left not a shadow of doubt of the guilt of the accused. Reasonable men could not differ upon this issue. Nor would any penalty but the extreme penalty of death begin to answer for the enormity of the crime, as evidenced by the manner in which it was perpetrated.

   *Held:* That improper remarks of the attorney assisting in the prosecution could not have improperly influenced the jury, either in arriving at a verdict of guilty, or in fixing the punishment.

10. Criminal Law—*New Trial—Demonstration of Bystanders.*—At the trial of a prosecution for murder a demonstration of approval by bystanders of inflammatory remarks of assistant counsel for the prosecution was promptly checked by the court, and all persons who engaged in it were severely reprimanded, and the jury were very fully and very earnestly instructed to disregard it.

   *Held:* That an assignment of error based upon the demonstration was without merit, more especially in view of the fact that under the evidence no other verdict was possible.

11. CRIMINAL LAW—*Demonstration of Bystanders.*—Demonstrations of approval of argument of counsel by bystanders in a criminal case are to be deplored and condemned, but where such misconduct of spectators receives at the hands of the presiding judge a prompt and vigorous rebuke, sufficient to prevent its recurrence, it is not ground for a new trial.

Error to a judgment of the Circuit Court of Lee county.

*Affirmed.*

The opinion states the case.

*E. W. Pennington,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorney-Generals,* for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

William Spencer, a colored man and a convict working with the State road force in Lee county, was indicted for the murder of a white girl, Maxie Kinser, thirteen years of age, in the county of Lee, on October 31, 1924. He was ably defended by counsel assigned him by the court for this purpose.

The jury found him guilty of the murder and fixed his punishment at death. Upon this verdict judgment was rendered by the court, and from that judgment a writ of error was awarded.

There are three assignments of error.

[1] The first assignment alleges error in giving instruction No. 11 for the Commonwealth. The instruction was as follows:

"The court instructs the jury that murder by poison, lying in wait, imprisonment, starving, or any wilful,

deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery, or burglary, is murder in the first degree. All other murder is murder in the second degree."

We understand that this assignment of error was not insisted upon here, but if it had been, the instruction was only given as the statutory definition of murder. It properly defined it in the very language of the statute, it could not have misled the jury, and there was no prejudicial error in giving it.

[2] The second assignment of error is set out in bill of exceptions No. 2, where in effect a mistrial is charged on account of alleged intemperate and inflammatory language used by the assistant prosecuting attorney, as follows:

"Gentlemen of the jury, that man there (pointing towards defendant), is the low down fiend who committed that awful crime of the killing of that little girl, Maxie Kinser; there is no doubt or question about that. He did not rape her, but no doubt that was his purpose. I believe God sent those two little boys up the hill making a noise rolling their wheel, which he heard and ran away. No doubt God sent these two little boys up there to scare that fiend away, so that the little girl could go on to heaven virtuous. What would he care for a life sentence in the penitentiary of the State! That would just be a home for him, there to be fed and clothed at the expense of the taxpayers of the State. He had already been confined in the penitentiary for a long time, and that has done him no good. You ought to give him the death sentence. I could gladly see it, and it would do my soul good to see that fiend—that low down niger—the very scum of the earth, who sits there, placed in the hottest place in hell, where he ought to be, and I would rejoice to hear his flesh broil and his bones crackle."

The bill of exceptions shows that upon objection being made to the language so used, the court promptly instructed the jury to disregard the statements and that they should be in no way influenced by them. The court was not asked to declare a mistrial, discharge the jury and grant the prisoner a new trial, or after the verdict to set it aside and grant the prisoner a new trial. The objection and exception were to the language used, without further motion of any kind. The proper procedure would have been to move the court to set aside the verdict of the jury and grant the prisoner a new trial, or to discharge the jury and grant the prisoner a new trial.

However, if upon the whole case it appears to this court that the accused was prejudiced by the language used and did not have a fair trial, it would be the duty of this court to reverse the case and remand it for a new trial.

[3] The decisions in Virginia and elsewhere support these two general propositions:

1. That a new trial may be allowed where the court has failed or refused to properly check improper remarks or argument of counsel, or to properly instruct the jury thereon, but the statements must be fairly calculated to improperly influence the jury. *Mullins Case*, 113 Va. 792, 75 S. E. 193; *McCoy's Case*, 125 Va. 778, 99 S. E. 644.

[4-6] 2. That there are cases in which the effect of statements of counsel cannot be adequately overcome by direction to the jury to disregard the objectionable statements. *Washington & O. D. Ry.* v. *Ward*, 119 Va. 339, 89 S. E. 140; *Rinehart & Dennis Co.* v. *Brown*, 137 Va. 675, 120 S. E. 269; *Harris* v. *Commonwealth*, 133 Va. 700, 112 S. E. 753.

The inquiry upon this assignment of error, therefore,

is, as stated in 29 Cyc. 774, "whether the statements were fairly calculated to improperly influence the jury," notwithstanding the instruction of the court to disregard. We cannot determine this question by an examination of the statements alone. The question as to whether language used is prejudicial depends also upon the facts of the particular case. Thus, if, in the trial of a criminal case, the evidence is such that reasonable men could not disagree as to the guilt of the accused, and further, if the enormity of the crime is such that only the highest penalty prescribed by law will meet the ends of justice, we have a case which, while it would not justify the use of inflammatory language in argument, the use of such language would not prejudice the accused, as it might well do in a case where the guilt of the accused was not so certainly established, and where it may be a debatable question as to the grade of punishment which should be meted out.

[7] We cannot, in any aspect of the case, justify the remarks of the assistant attorney for the Commonwealth. We do not consider that they amounted to the indulgence in inferences not supported by the evidence, but they were of an inflammatory nature, calculated to arouse prejudice and passion, which, in a case less certainly made out than the one here presented, would have raised a serious question as to the propriety of declaring a mistrial by the court. A very just and proper rebuke was administered by the presiding judge, and but for the fact that the result, as we view the evidence, would inevitably have been the same, if the assistant prosecuting attorney had not addressed the jury at all, we should feel constrained to reverse the case.

[8] The frequency with which complaints of the use of inflammatory, abusive, and extravagant and intem-

perate language are reaching this court leads us to suggest that trial courts are fully competent to protect themselves against these assaults upon orderly procedure, by fining or, in aggravated cases and when the offense is persisted in, even by imprisoning offenders. It is fair to say, however, that so far as we are advised, no complaint has reached us as to misconduct of this character on the part of the regular attorneys for the Commonwealth.

[9] But the evidence in this case, although circumstantial, leaves not a shadow of doubt of the guilt of the accused. Reasonable men could not differ upon this issue. Nor would any penalty but the extreme penalty of death begin to answer for the enormity of the crime, as evidenced by the manner in which it was perpetrated.

It is not necessary to go at length into the details of the case to demonstrate the truth of these two assertions. The sufficiency of the proof was admitted by counsel in the argument. The prisoner's connection with the crime and the enormity of it are sufficiently indicated by the following brief statement:

On the day before the murder the prisoner had been to the home of the parents of Maxie Kinser, a thirteen year old girl, and had carried away an opossum, which some members of the family had baked for him, in a pan loaned him for the purpose. He suggested to a companion that there were two pretty girls at the Kinser home, and if he would carry the pan back he might get in with one of them. On the day of the murder, he started to the Kinser home to carry the pan back. Maxie Kinser was alone in the house at the time, her father having gone to work, her mother and two sisters having gone to the home of a married daughter, her small brother having gone to drive the cows to pasture. The prisoner was seen going in the direction of the house

with the pan, he was seen handing it in the window to some one inside. It was found in the Kinser home afterwards. The prisoner with a stick in his hand was seen by several witnesses running from the direction of the Kinser house, and a few minutes after he was seen, the little brother, returning home with a companion, found Maxie Kinser in a semiconscious condition, lying on the ground at the back door of the house, with her skull crushed, bleeding at the mouth and ears, and denuded of all her clothing. There were bruises, described as finger marks, on her throat, and her body was scratched and bruised. She died without regaining consciousness.

The little girl was left alone only a few minutes by her brother, and during that time she was killed. The time of the appearance of the prisoner in the vicinity of the house, at the house, and of his running away from it, fit in exactly with this short space of time when she was alone, and there was a general alarm, resulting in Spencer's arrest almost before he had gotten out of the shadow of the house. There were blood spots on his overalls, and analysis showed them to be human blood. There was other incriminating evidence, but this is sufficient to show not only the certainty of guilt, but the enormity of the crime.

In such a case, we cannot conceive that the remarks of the attorney assisting in the prosecution could have improperly influenced the jury, either in arriving at a verdict of guilt, or in fixing the punishment.

[10, 11] The third and last assignment of error is based upon demonstrations of bystanders in the presence of the jury. The demonstration consisted of applause of the remarks of the attorney above referred to, which was promptly checked by the court, and all persons engaged in it were severely reprimanded, and

the jury were very fully and very earnestly instructed to disregard it.

It is needless to go into a discussion of this assignment. Much of what has been said in the discussion of the second assignment is applicable here. In addition, the subject of this assignment has been thoroughly considered by this court in a number of recent cases. Without quoting from any of them, reference is made to the cases of *Doyle* v. *Commonwealth*, 100 Va. 808, 40 S. E. 925, and *Bowles* v. *Commonwealth*, 103 Va. 816, 48 S. E. 527. In both of these cases, where the circumstances were identical with the circumstances here, this court, speaking in the first case through Judge Keith and in the second through Judge Cardwell, while such conduct was deplored and condemned, it was held that as the misconduct of the spectators received at the hands of the presiding judge a prompt and vigorous rebuke, sufficient to prevent its recurrence, the assignment of error was without merit. And so we hold here, especially as in addition to rebuking the spectators, the presiding judge, in this case, instructed the jury to disregard the demonstration.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*