# Wytheville.

## HORTON CUNNINGHAM v. TOWN OF NARROWS.

### June 21, 1928.

Argued and submitted before Judge Holt took his seat.

1. INTOXICATING LIQUORS—*Possession—Evidence—Custody of Bottle where from the Evidence of Prosecution it Appeared that at the First Trial the Bottle contained Whiskey, Whereas at the Later Trial the Bottle contained Water.*—In the instant case the accused was tried and convicted of the illegal possession of whiskey. At the first trial several witnesses testified that the bottle found in the possession of accused contained some liquid that smelled like whiskey. Another witness stated that he tasted the contents and it was whiskey. At the later trial the bottle, though still smelling of whiskey, contained only water. The town sergeant testified for the prosecution that the bottle was kept in a desk in the court room open to the public; that the lock on the desk was a small lock which could have been opened with another key. There was no evidence to show that the bottle had been out of the possession of the officers who testified that they had made no change in the contents.

   *Held:* That the evidence of the sergeant was admissible to show the custody of the bottle and to explain the conflict in the evidence as to its contents.

2. INTOXICATING LIQUORS—*Arguments of Counsel—Where Evidence at First Trial Tended to show that a Bottle found in Possession of Accused contained Whiskey, Whereas at the Later Trial the Bottle only contained Water.*—In a prosecution for the illegal possession of whiskey, at the first trial there was evidence tending to show that the bottle found in the possession of accused contained whiskey, whereas at a later trial the bottle only contained water. The Commonwealth's attorney, in arguing the case to the jury, stated: "Gentlemen of the jury, I will tell you why the bottle now only contains water, that is easy enough to do, somebody got hold of that bottle and got rid of the liquor and put the water in there, after it was placed in the desk."

   *Held:* That while the Commonwealth's attorney should have been more careful, and the judge should have emphasized the fact that the Commonwealth's attorney did not intend to and could not testify to the fact suggested, but merely to argue from the evidence that

water must have been substituted for whiskey, the occurrence did not justify a reversal of the judgment for conviction.

3. Intoxicating Liquors—*Prosecution for Possession—Conflicting Evidence—Case at Bar.*—In the instant case accused was tried and convicted for the illegal possession of whiskey. There was evidence tending to show that the accused, a school boy, was found by the janitor of the school in possession of a bottle containing whiskey. When the janitor approached accused was putting the bottle under his coat and there were a number of other boys present. At the last trial two of these boys testified that they found a bottle which looked like the one produced in evidence, which had a small quantity of whiskey in it, which they emptied and then partly refilled with water, and hid to fool somebody. At the former trial these boys had not so testified. The prosecution introduced evidence tending to show that the contents of the bottle had been changed from whiskey to water between the first and last trial.

*Held:* That the conflicting testimony of the two boys did not justify a reversal of the conviction of accused, as the evidence for the prosecution, which the jury evidently believed, was sufficient to support the conviction.

Error to a judgment of the Circuit Court of Giles county.

*Affirmed.*

The opinion states the case.

*W. B. Snidow, M. P. Farrier* and *Walker A. Williams,* for the plaintiff in error.

*Martin Williams,* for the defendant in error.

Prentis, P., delivered the opinion of the court.

The accused, who was seventeen years old at the time of his alleged offense, has been three times convicted of the crime charged, *i. e.,* the illegal possession of whiskey. His first trial was before the mayor of the town, November 4, 1926. He appealed from that conviction to the circuit court, and there, December 16, 1926, on

the suggestion that he was then less than eighteen years of age, the court remanded the case to the judge of the juvenile and domestic relations court for trial. He was thereafter, January 8, 1927, tried by that official and again convicted. He again appealed to the circuit court, where on March 15, 1927, he was again tried and a jury having found him guilty, the judgment here under review was entered. Upon each of these trials, except the first when he was fined $50.00, the minimum penalty, $50.00 fine and thirty days confinement in jail, was imposed.

The prosecution is based on the town ordinance denouncing the offense, which was adopted pursuant to the statute.

[1] This is a summary of the testimony relied on by the prosecution: The janitor of the public school building at Narrows said in substance, that he had been told to watch out for persons drinking or having liquor about the school house; that on the night of October 30, 1926, there was a Hallowe'en party there, and the accused beckoned to a lot of other boys and said: "Come on," and then one of the boys said: "They have got something, let's go in," and they went into the tiolet of the building; that he, witness, followed them, and the accused, Cunningham, had a bottle in his hand, and when he, witness, approached, turned and was putting the bottle under his coat, when witness took it away from him; that the bottle was not uncorked by the witness, but he could smell the liquor; that the bottle was delivered by him to Charlton, who was acting as town sergeant; that the accused begged him not to tell his father. After they went out in the yard the accused said that he found the bottle in the toilet. Charlton testified that he did not taste the contents of the bottle, but that it smelled like whiskey;

that he delivered it to Dillow, the town sergeant; that it was kept in a desk upon which there was a common lock, of which he had the key, but which could be opened easily with another key. Dillow, the sergeant, confirmed Charlton as to the custody of the bottle and its smell; that the room in which the desk stood was a court room, open to the public; that he kept the key, but that it had a small lock which could have been opened with another key. Gearhart, police justice, testified that he did not try the case first, because he had been summoned as a witness; that while the mayor was trying it, he tasted the contents and that it was whiskey; that he merely touched the bottle to his lips to see whether it was whiskey.

At the time of the last trial, March 15, 1927, more than three months later, the bottle still smelled of whiskey, but then contained water.

1. The first assignment of error arises thus: Dillow, the town sergeant, was asked: "If it would not have been easy for some one to have gone in there and unlocked the desk and changed the liquor for water?" The court over the objection of the accused permitted the witness to answer: "The desk was in the court room, which was open to the public, and the lock on the desk was a small lock that could have been opened with another key." At the third and last trial it appeared that the bottle then contained water, while the prosecution had introduced evidence tending to show that at the first trial, three and a half months previous to that time, it contained whiskey. The witness merely testified to the facts as to the custody of the bottle. It was perfectly clear that if the bottle in fact contained whiskey when first delivered to the officer, some one had in the interval emptied it of the whiskey and substituted water. To show the custody of the

bottle and to explain this conflict, if possible, was essential. Every fact as to the custody of the bottle thus became relevant, and the testimony was clearly admissible.

[2] 2. The second assignment, in the language of the attorney for the accused, reads:

"The second assignment of error is to the action of the court in the failure to sustain the objection and grant the request of the defendant, when the Commonwealth's attorney, in arguing the case to the jury, stated: 'Gentlemen of the jury, I will tell you why the bottle now only contains water, that is easy enough to do, somebody got hold of that bottle and got rid of the liquor and put the water in there, after it was placed in the desk.' There was evidence (which was objected to and the objection overruled) as to the character of the desk and the lock and key as shown by the first exception, but there was no evidence of any kind or character to show that the bottle had been out of the possession of the officers and they each testified that they had made no change in the contents, and for all they knew that bottle then had in it what it had in it when taken at the school house from Cunningham."

The able prosecuting attorney should certainly have been more careful, and it seems to us that the trial judge should have so indicated to him and to the jury at the time. That is, it should have been then emphasized that the prosecuting attorney did not intend to and could not testify to the fact suggested, but merely to argue from the evidence that the water must have been substituted for the whiskey which the evidence tended to show was in the bottle at the first trial. This would have been legitimate argument, for this is suggested by the proven facts. While his language was unrestrained, the experienced attorney who used

it did not intend to exceed his privilege, and it is not probable that the jury misunderstood or misconstrued his language. This tendency to extravagant overstatements seems to be the besetting sin of ardent advocates. We repeat what has been so frequently indicated here, namely, that the trial judges should be more alert and resolute to curb this indefensible abuse of the advocate's privilege.

The occurrence complained of in this case does not justify a reversal of the judgment.

3. The other assignment is that the verdict is contrary to the law and the evidence.

[3] At the last trial, two boys testified for the accused that on the evening of the occurrence they found a bottle which looked like the one produced in evidence, which had a small quantity of whiskey in it, which they emptied and then partly refilled with water, and then hid in the toilet to fool somebody. As to this, it is certainly true that if the jury had credited this belated testimony, they should and undoubtedly would have acquitted him. This, however, is insufficient to justify us in reversing the judgment, because the conflicting testimony introduced for the prosecution, which the jury evidently believed, is sufficient to support the conviction.

*Affirmed.*