# Wytheville.

## Norfolk and Western Railway Company v. W. R. Eley.

June 13, 1929.

The opinion states the case.

*F. M. Rivinus, L. P. Holland,* and *James H. Corbitt,* for the plaintiff in error.

*Holland & Lovelace* and *John N. Sebrell,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action was brought by the plaintiff, W. R. Eley, to recover damages for injuries which were alleged to have resulted from the negligence of the defendant company. There was a verdict for the plaintiff and the court entered judgment thereon, to which judgment this writ of error was awarded.

There are eleven assignments of error dealing with the action of the court in giving and refusing instructions; in refusing to set aside the verdict of the jury because it was contrary to the law and the evidence; in refusing to set aside the verdict because of improper argument before the jury of counsel for the plaintiff; and in refusing to enter judgment for the defendant; but in the view we have of the case, which leads to a reversal, it becomes unnecessary to discuss the alleged errors of the court in giving and refusing instructions and in refusing to set aside the verdict of the jury as contrary to the evidence.

The eleventh assignment of error is: "The court erred in permitting counsel for the plaintiff to make improper argument before the jury, as shown in bill of exceptions No. 1."

The material part of the bill of exceptions is as follows:

"During the closing argument for plaintiff, Mr. Sebrell, referring to the conflict of evidence between the plaintiff and the engineer and fireman as to the blowing of the whistle and the ringing of the bell, and replying to the argument of defendant's counsel that the plaintiff's testimony should be considered with regard to his interest in the case, said:

" 'My friend Corbitt talks about applying common sense and reason to this case. Let us do that:

" 'You know where a man himself is charged with fault that he always denies it. I don't know—it may

be that this good gentleman who is engineer of that train and the good fireman of that train may have thought they can remember, to save their reputations, what crossings they blew for. Why, it has been since last November, and no man can remember what crossings they blew for. I have no doubt they blow for a crossing and a minute after, they would not remember it because they do it as a matter of form. So the engineer and conductor and fireman would imagine that all the way down they blew for the crossings, but they can't give you any special reason why they remember except Holland says that they are passing trains all day long. They had not expected anything to happen at that time.

" 'You, in all your experience, have never been in a court room in your life, nor has anybody else, and heard an engineer or a fireman admit that he failed to blow for a crossing. His family and his meat and bread are dependent on it. He works for the railroad company, and the minute he comes in and says that he fails in that duty and subjects the railroad to damages: "You are suspended, Mr. Engineer." '

"Mr. Corbitt: 'I except to the statement of counsel because there is no evidence in the record that that has happened.'

"The Court: 'There is no evidence of it, but it seems to me that the counsel is within his rights in his argument. There is no evidence as to that, but I think he can argue it.' To which ruling of the court the defendant did not except.

"Mr. Sebrell: 'You take these things: They happen according to our common experience. We hear testimony and tell whether a man is reasonable or whether he testifies according to our common experience. Here the engineer and the fireman perhaps

thought that they did but they come into court and tell you that they were not at fault. I expected that. I am used to that.

" 'There is not a person that they have brought here, except somebody who is on the payroll and whose job, perhaps, depends upon it, that has been able to testify or who has been willing to testify that there was a sound of a bell or blowing of a whistle.' "

Questions similar to the one herein involved have frequently been made the basis of complaint in this court. See *Wickham* v. *Turpin*, 112 Va. 239, 70 S. E. 514; *Wash. & O. D. Ry.* v. *Ward*, 119 Va. 339, 89 S. E. 140; *N. & W. Ry. Co.* v. *Allen*, 122 Va. 617, 95 S. E. 406; *Marshall's Case*, 140 Va. 553, 125 S. E. 329; *Spencer's Case*, 143 Va. 531, 129 S. E. 351; *Mansfield's Case*, 146 Va. 279, 135 S. E. 710; *Harold's Case*, 147 Va. 617, 136 S. E. 658; *Eagle, etc., Ins. Co.* v. *Heller*, 149 Va. 82, 140 S. E. 314, 57 A. L. R. 490; *Cunningham* v. *Town of Narrows*, 150 Va. 609, 143 S. E. 740.

Those cases are relied upon by defendant in error to sustain the action of the trial court. We do not think the cases in point. In each of them some fact or circumstance is found which distinguishes it from the instant case. Without discussing them *seriatim*, it is sufficient to say that the record discloses that when objection was made to the improper argument of counsel, the trial court, either by sustaining the objection or by instruction, endeavored to correct the error. No such situation confronts us in the case at bar.

There seems to be a growing disposition upon the part of counsel to take advantage of the court's indulgence and overstep the bounds of legitimate argument. Already too many sins have been committed in the name of "heat of argument." Trial courts

should be the forum in which litigants should have their rights determined according to the rules of law, instead of becoming arenas in which counsel engage in a battle of wits.

In *N. & W. Ry. Co.* v. *Allen*, 122 Va. 617, 95 S. E. 410, Judge Burks said: "This court has more than once reprobated in no uncertain terms the practice of injecting into arguments of counsel statements calculated to inflame the minds of jurors, and tending to produce verdicts as a result of prejudice rather than a calm consideration of the evidence. Every litigant, natural or artificial, is entitled to a fair and impartial trial, and there should be excluded from the tribunal which is to try the case, whether judge or jury, everything that has no tendency to aid such tribunal in doing impartial justice between the litigants. There can be no difference of opinion on this subject. But, while assenting to this statement of the law, it is argued that the error of addressing improper remarks to the jury was harmless error, as there was ample evidence to sustain the verdict, and it does not appear that the jury found any punitive damages. The harm consisted in depriving the defendant of a fair and impartial tribunal to weigh and consider the evidence lawfully before it touching the actual damages sustained."

 In the instant case it is manifest that the remarks of such eminent counsel were calculated to produce prejudicial results. There is no evidence in the record that the witnesses testifying for the defendant were influenced in any way by the hope of retaining their positions, in case they committed perjury. The strictures heaped upon them was a direct impeachment of their integrity. Witnesses cannot be impeached in this manner. If it was desired to impeach these witnesses, either as to integrity or as to veracity, some one

should have been called who was under the sanctity of an oath and subject to the ordeal of cross-examination. It is impossible to measure the harmful effect upon the jury of the statement, not as a matter of opinion but as a matter of fact, that the "bread and meat" of the witness and of his family were dependent upon the giving of false testimony.

In addition to the great weight which the jury must have attached to the statement of the learned counsel, that the alleged false testimony was the result of necessity, is superadded the prestige of the court in giving its approval to the language employed.

There is no legal tape with which we can measure the resultant harm when counsel wander too far outside the record. The harshness of a verdict in a criminal case or the exorbitant amount of damages awarded in a civil case may be the criterion applicable to a particular case, but this rule is not exclusive. When it is made to appear that a litigant has not been afforded a fair and impartial trial, this court will overlook technical refinements and remand the case for a new trial.

Cases in support of this view are numerous. A few of them will be cited.

In *N. & W. Ry. Co.* v. *Allen, supra,* it is said: "On account of the improper remarks by counsel for the plaintiff in addressing the jury, the verdict will be set aside."

In *Eagle, etc., Ins. Co.* v. *Heller, supra,* Chief Justice Prentis said: "We have frequently had occasion to allude to this bad habit of too many attorneys, who in the excitement of the contest ignore or forget that in a tribunal engaged in the investigation and determination of facts upon which the rights of litigants depend, passion, prejudice and vituperation have no proper

place; that the privilege and highest duty of counsel should be to aid the court and the jury by accuracy, learning, reason and persuasion to interpret the evidence so as to ascertain the truth; and that violent denunciations are a hindrance and not an aid thereto, which should not be permitted in a court of justice. The trial courts should firmly and unflinchingly restrain such indulgences. When they fail to do so and verdicts are induced thereby, they will and should be set aside."

In *Wabash R. Co.* v. *Billings*, 212 Ill. 37, 72 N. E. 2, the trial court was reversed because counsel indulged in the following language: "These powerful railroad corporations ignore the rights of citizens, maim or kill them at pleasure, and then bring in their employees to swear them through; that most of the witnesses for the defense were employees of the defendant and had to swear the way they did or lose their jobs, and that they ought not to be believed for that reason."

On page 41 of the opinion, 212 Ill. (72 N. E. 4), the court says: "Counsel for defendant interposed an objection to such a course of argument, and the court sustained it, and said to the jury that the remarks were improper, and that they should disregard them and decide the case upon the merits, and according to the law as the court should give it in the instructions. Such a statement by counsel is wholly indefensible, and, unless it can be seen that it did not result in injury to the defendant, the judgment ought to be reversed on account of it."

In *Illinois Central R. Co.* v. *Jolly*, 119 Ky. 452, 84 S. W. 330, the trial court was reversed because of the statement by plaintiff's counsel that railroad employees are required to give favorable replies in order to hold their jobs. On page 456 of 119 Ky. (84 S. W. 331) of

the opinion, the court says: "But the latter part of the statement, to the effect 'they must answer "Yes" in order to hold their job, and if they answer "No," they walk a plank,' was wholly unwarranted, there being no evidence in the record to authorize it. Appellee's counsel stated this as a fact. He did not profess that it was merely an opinion or impression of his own; and such language was calculated to inflame the minds of the jury against appellant, and to weaken the strength of the evidence of its employees who had testified before them."

In *St. Louis R. Co.* v. *Boback*, 71 Ark. 427, 75 S. W. 473, we read: "In other words, counsel stated, in effect, that if these witnesses had not testified that the whistle was blown, they would have been discharged by the company, and that they therefore testified under a sort of compulsion. But there was no evidence that this was true, and the argument was improper and unfair. The court should have sustained the objection to it, and we think he erred in refusing to do so."

In *Rinehart & Dennis Co.* v. *Brown*, 137 Va. 679, 120 S. E. 272, Judge Burks quotes with approval the language of Judge Brewer in *Winter* v. *Sass*, 19 Kan. 556, which is as follows: "All that can be safely laid down is, that whenever in the exercise of a sound discretion it appears to the court that the jury may have been influenced as to their verdict by such extrinsic matters, however thoughtlessly or innocently uttered, or that the statements were made by counsel in a conscious and defiant disregard of his duty, then the verdict should be set aside."

In *New York Central R. Co.* v. *Johnson*, 49 Sup. Ct. 300, 73 L. Ed., Mr. Justice Stone said: "Respondents urge that the objections were not sufficiently

specific to justify a reversal. But a trial in court is never, as respondents in their brief argue this one was, 'purely a private controversy * * * of no importance to the public.' The State, whose interest it is the duty of the court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted, and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict uninfluenced by the appeals of counsel to passion or prejudice. See *Union P. R. Co.* v. *Field*, 137 Fed. 14, 15; 69 C. C. A. 536; *Brown* v. *Swineford*, 44 Wis. 282, 293, 28 Am. Rep. 582. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error. *Brasfield* v. *United States*, 272 U. S. 448, 450, 47 Sup. Ct. 135, 71 L. Ed. 345, 346."

The judgment complained of will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*