# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## McCoy v. Commonwealth.

### June 18, 1919.

1. Homicide—*Self-Defense—Instructions—"Bare Fear."*—In a prosecution for homicide the court instructed the jury as follows: "The court tells the jury that bare fear that a man intends to commit murder or other atrocious felony, however wellgrounded, unaccompanied by any overt act indicative of any such intention, will not warrant killing the party by way of prevention. There must be some overt act indicative of immediate danger at the time." The theory of the prosecution was that the defendant was the aggressor, and that the killing was unprovoked except by the angry words of the deceased shortly before the killing. This theory was supported by the testimony in the case. If the jury took this view of the case, it was a case of "bare fear," unaccompanied by any overt act of aggression at the time of the shooting, and hence the first part of the instruction was neither inapplicable nor misleading. On the other hand, there was testimony that the deceased had drawn a weapon on the defendant, and hence it was proper for the instruction to present that theory of the case, as was done by the last sentence of the instruction.

2. Assault—*Self-Defense—Injurious Words—Case at Bar.*—In view of the evidence for the Commonwealth and of the other instructions given, there was no error in giving, at the instance of the Commonwealth, the instruction that: "The court further tells the jury that words, however grievous, will not justify an assault."

3. Homicide—*Self-Defense—Necessity Created by Accused.*—With regard to the necessity that will justify the slaying of another in self-defense, it would seem that the party should not have wrongfully occasioned the necessity; for a man shall not in any case justify the killing of another by a pretense of necessity, unless he were without fault in bringing that necessity upon himself.

4. Homicide—*Self-Defense—Justifiable and Excusable Homicide—Retreat.*—If the accused is in no fault whatever, but in the discharge of a lawful act, he need not retreat, but may repel force by force, if need be, to the extent of slaying his adversary.

This is justifiable homicide in self-defense. But if a sudden fight is brought on, without malice or intention, the accused, if in fault, must retreat as far as he safely can, but, having done so and in good faith abandoned the fight, may kill his adversary, if he cannot in any other way preserve his life or save himself from great bodily harm.

5. Homicide—*Self-Defense—Justifiable and Excusable Homicide.*— In a prosecution for homicide the court instructed the jury "that when one is assaulted, unless the assault is so fierce or of such nature as to prevent it, he should retreat so far as he reasonably can with safety to himself to prevent killing his adversary." This instruction ignored the distinction set forth in the preceding syllabus between justifiable and excusable homicide in self-defense, and makes retreat necessary in all cases, unless the assault is of such nature as to prevent retreat, and was therefore erroneous. While instructions are to be read in the light of the evidence, the omission of such important elements as were omitted in this instance was seriously prejudicial to the defendant, and is ground for reversal.

6. Homicide—*Declarations and Admissions—Declarations of One Indicted with Accused—Appeal and Error—Harmless Error.*— In a prosecution for homicide, the court refused to exclude the statements one indicted jointly with defendant made a short while before the killing, ordering two boys to "get away from here." The statements were not objected to when offered, because defendant had expected that the Commonwealth would in some way connect the party indicted jointly with him with the alleged offense. No connection was subsequently shown, and there was no evidence that defendant heard the boys ordered away, or in any way assented to or acquiesced in the alleged statements.

*Held:* That while the statements testified to were wholly irrelevant to the issue, and should have been excluded, the error was harmless, as the defendant could not have been prejudiced in any way by them, as it appeared that he was in no way connected with them.

7. Homicide—*Argument of Counsel—Statements of Counsel not Supported by the Evidence.*—In a prosecution for homicide, in his concluding argument the Commonwealth's attorney stated that the way a certain weapon got into the case was that after defendant shot the deceased and he fell, one indicted jointly with defendant came up and threw the weapon down by the side of the deceased. The theory of the defense was that the deceased was in the act of striking the defendant with the weapon when defendant shot him in self-defense. Counsel for defendant promptly objected to this statement of the Common-

wealth's attorney, on the ground that it was not supported by the evidence.

*Held:* That the statement of the Commonwealth's attorney was not supported by any evidence in the case, and was highly prejudicial to the accused, and the statement of the trial judge that he did not remember such evidence as to the weapon, and that the jury should not consider any statements of counsel not supported by the evidence, furnished no protection to the defendant against the improper remarks of the Commonwealth's attorney.

Error to a judgment of the Circuit Court of Dickenson county.

*Reversed.*

The opinion states the case.

*Skeen & Skeen, Chase & McCoy* and *D. F. Kenedy,* for the plaintiff in error.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *F. B. Richardson,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

William H. McCoy was convicted of murder of the second degree, and brings the case here to review alleged errors said to have been committed on the trial.

[1]    The first error assigned is that the court erred in giving instructions 9 and 10 at the instance of the Commonwealth.    These instructions are as follows:

"9. The court tells the jury that bare fear that a man intends to commit murder or other atrocious felony, however well-grounded, unaccompanied by any overt act indicative of any such intention will not warrant killing the party by way of prevention.    There must be some overt act indicative of immediate danger at the time.

"10. The court further tells the jury that before the

prisoner can rely upon self-defense there must be some act by the deceased meaning present peril or something in the attending circumstances indicative of the present purpose to make the apprehended attack.  The act so done, or the circumstances thus existing, must be of such a character as to afford the defendant reasonable grounds for believing there was a desire for committing a felony or to do some seriously bodily harm, and imminent danger of carrying such design into immediate execution."

The objection to these instructions is, that they were "inapplicable and misleading to the jury," and that, as to instruction No. 9, the "bare fear" theory should not have been presented as it was, in view of the evidence of self-defense offered by the defendant.

We are of opinion that the instructions are not amenable to the objections made to them.  The theory of the prosecution was that the defendant was the aggressor, and that the killing was unprovoked except by the angry words of the deceased shortly before the killing.  This theory was supported by the testimony of the only eye-witness to the shooting, taken in connection with other testimony in the case of insulting language and conduct of the deceased.  If the jury took this view of the case, it was a case of "bare fear" unaccompanied by any overt act of aggression at the time of the shooting, and hence the first part of instruction 9 was neither inapplicable nor misleading.  On the other hand, two witnesses for the defendant, who were present immediately before the shooting, testify that the deceased had drawn a blackjack on the defendant, and was holding it in his hand behind him, and one of them states that he was threatening to knock the brains out of the defendant just before the shooting commenced; and hence it was proper for instruction No. 9 to present that theory of the case, as was done by the last sentence of that instruction.  For the same reason, instruction 10 was also unobjectionable.

[2] In view of the evidence for the Commonwealth and of the other instructions given, there was no error in giving, at the instance of the Commonwealth, instruction 13, that "the court further tells the jury that words, however grievous, will not justify an assault."

[3, 4] It is further assigned as error that the court gave instruction No. 12 for the Commonwealth, which is not only erroneous in itself but is also in direct conflict with instruction 6 given for the defendant. These instructions are as follows:

Instruction No. 12, given for the Commonwealth: "The court tells the jury that when one is assaulted, unless the assault is so fierce or of such nature as to prevent it, he should retreat so far as he reasonably can with safety to himself to prevent killing his adversary."

Instruction No. 6, given for the defendant: "The court further instructs the jury that if one is unjustifiably and feloniously assaulted he does not have to retreat, but may stand his ground and repel force by force and may use such force as to him may seem reasonably necessary to repel the attack, even to the taking of the life of the assailant."

[5] The two instructions were intended to present the distinction between *justifiable* homicide in self-defense, and *excusable* homicide in self-defense. Defendant's instruction No. 6 correctly stated the law of *justifiable* homicide in self-defense, and accords with the holding in *Jackson's Case*, 96 Va. 107, 30 S. E. 452, where it is said that "a person assaulted while in discharge of a lawful act, and reasonably apprehending that his assailant will do him bodily harm, has the right to repel the assault by all the force he deems necessary, and is not compelled to retreat from his assailant, but may in turn become the assailant, inflicting bodily wounds until his person is out of danger." It is quite apparent that instruction 12, given for the Commonwealth, was intended to present the doctrine of *excusable* homicide

in self-defense. The leading case on that subject in this State is *Vaiden's Case,* 12 Gratt. (53 Va.) 717, which has been often cited with approval. It is there said: "With re-. gard to the necessity that will justify the slaying of another in self-defense, it would seem that the party should not have wrongfully occasioned the necessity; for a man shall not in any case justify the killing of another by a pretense of necessity, unless he were without fault in bringing that necessity upon himself." See also *Jackson's Case,* 98 Va. 845, 36 S. E. 487. In a note to the latter case in 6 Va. Law Reg. 177, in speaking of the difference between justifiable and excusable homicide in self-defense, it is said: "The rule may be briefly stated thus: If the accused is in no fault whatever, but in the discharge of a lawful act, *he need not retreat,* but may repel force by force, *if need be,* to the extent of slaying his adversary. This is *justifiable* homicide in self-defense. But if a sudden fight is brought on, without malice or intention, the accused, if in fault, *must retreat as far as he safely can,* but, having done so and in good faith abandoned the fight, may kill his adversary, if he cannot in any other way preserve his life or save himself from great bodily harm. *Vaiden's Case,* 12 Gratt. (53 Va.) 717, 729." The assaults referred to, of course, are other than in defense of one's home. Instruction No. 12, given for the Commonwealth, ignores the distinction above mentioned, and makes retreat necessary in all cases, unless the assault is of such nature as to prevent retreat, and was therefore erroneous. While instructions are to be read in the light of the evidence, the omission of such important elements as were omitted in this instance was seriously prejudicial to the defendant, and is ground for reversal.

[6] The next assignment of error is to the action of the trial court in refusing to exclude the alleged statements of one Frank Skeen to two small boys. Skeen was indicted jointly with the defendant. The Commonwealth offered a

witness—Alonzo Grizzle, ten years old—who stated, among other things, that a short while before the shooting Frank Skeen said: "You boys get away from here;" and another witness, Hodges McCoy, a boy eight years old, who stated that Skeen said to him shortly before the shooting: "You boys go to the house." These statements were not objected to when offered, because the defendant had expected that the Commonwealth would in some way connect Frank Skeen with the alleged offense. No connection was subsequently shown, and no evidence offered to show that the defendant heard Frank Skeen, or in any way assented to or acquiesced in the alleged statements of Skeen, and after the evidence was concluded the defendant moved to strike out the statements alleged to have been made by Skeen to the two witnesses aforesaid. It is true that under these circumstances the statements testified to were wholly irrelevant to the issue before the jury, and should have been excluded; but we have been unable to discover how the defendant could have been in any way prejudiced by them, as it appears that he was in no way connected with them. The error, therefore, was harmless.

[7] The next assignment of error is to the action of the trial court in permitting counsel representing the Commonwealth, in his closing argument to the jury, to give his opinion and theory as to how a certain blackjack got into the case. It appears from the evidence offered by the defendant that immediately preceding the shooting the deceased had drawn a blackjack on the accused, and was holding it in a threatening attitude, ready to strike, at the time the defendant shot him, and the testimony on behalf of the Commonwealth shows that immediately after the deceased was shot, the blackjack was found lying by his side and about a foot from his hand. The theory of the defense was that the deceased was in the act of striking the defendant with the blackjack when the defendant shot him in self-

defense. During the argument of the case, counsel representing the Commonwealth said: "Gentlemen, I will show you later on how the blackjack got into the case," and just before concluding his argument he said to the jury: "Now, gentlemen of the jury, I will give you my theory of how the blackjack got into this case. Just as soon as the defendant shot the deceased and he fell, Frank Skeen came up and threw the blackjack down beside the deceased." Counsel for defendant promptly objected to this statement, on the ground that it was not supported by the evidence, and that there was no evidence in the case on which to base the statement, and moved the court to tell the jury not to consider this statement, "and the court stated that it did not remember such evidence as to the blackjack (the attorney contending there was such evidence), and that the jury should not consider any statement of counsel not supported by evidence, and stated to counsel that it was dangerous to make a statement to the jury not supported by the evidence, and the jury would remember the evidence. This occurred at the close of the argument, to which action of the court in permitting the attorney representing the Commonwealth to argue to the jury that Frank Skeen threw down the blackjack by the side of the deceased, and in not telling the jury not to consider the same, the defendant, by counsel, excepted. * * * ."

We have been unable to find from the record that Frank Skeen was in the barn either before the shooting or thereafter before the finding of the blackjack by the side of the deceased. The statement of counsel is unsupported by any evidence in the case and was highly prejudicial to the accused. It was made in the closing argument on behalf of the Commonwealth, and counsel for defendant had no opportunity to reply to it. Such statements are prejudicial to the accused, and if not promptly corrected and the jury instructed to disregard them are ground for reversal. *Jessee*

v. *Commonwealth,* 112 Va. 887, 71 S. E. 612; *Mullins* v. *Commonwealth,* 113 Va. 787, 75 S. E. 193.    The statement of the trial judge that he did not remember such evidence as to the blackjack, and that the jury should not consider any statements of counsel not supported by the evidence, furnished no protection to the defendant against the improper remarks of counsel.

It is also assigned as error that the trial court refused to set aside the verdict as contrary to the evidence.   The evidence was conflicting on some important points in the case, and as the case has to be reversed for the errors hereinbefore pointed out, we deem it improper to indulge in any discussion of it.

For the errors hereinbefore mentioned, the judgment of the Circuit Court of Dickenson county will be reversed.

*Reversed.*