THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY CONLEY, Defendant-Appellant.

First District (1st Division)   No. 1—97—2740

Opinion filed June 7, 1999.

Winston & Strawn, of Chicago (Calvin P. Sawyler and Edward G. Zaknoen, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

A jury found defendant, Anthony Conley, guilty of four counts of attempted murder, three counts of aggravated battery with a firearm, and one count of aggravated discharge of a firearm in connection with the shooting of Michael Floyd, Tridell Riley, James Jenkins and Derrick Johnson. The trial court sentenced defendant to a total of 60 years in prison. Defendant appeals, contending the trial court erred by (1) giving an improper issues instruction; (2) refusing to instruct the jury on the doctrine of transferred intent; (3) improperly limiting cross-examination of Derrick Johnson; (4) making an improper comment about defendant's claim of self-defense; (5) preventing defendant from testifying that Floyd had previously fired shots at defendant's mother's house; (6) preventing defendant from testifying that Floyd was a member of a gang; (7) failing to appoint a psychological expert to evaluate defendant's mental state; and (8) sentencing him to 60 years in prison. Defendant also claims that his trial counsel provided ineffective assistance and that the mandatory consecutive sentencing statute (730 ILCS 5/5—8—4(a) (West 1992)) under which the trial court sentenced him is unconstitutional. We affirm.

Testimony at trial established that, in November 1995, stereo equipment was stolen from Floyd's car. Floyd believed that defendant was responsible for the theft. On February 5, 1996, Floyd was at a stoplight when he saw defendant's car pass by. Floyd pulled in front of

4

defendant's car, and the two got out to talk about the stereo equipment. Floyd became angry, picked up a crowbar, and smashed defendant's car windows. Floyd also hit defendant twice with the crowbar.

On April 3, 1996, Floyd picked up Riley, Jenkins and Johnson and then drove to defendant's mother's house. Defendant and his wife, who were in the house, saw Floyd get out and smash the windows of defendant's car, which was parked in front of the house. Defendant's wife ran out of the house and asked Floyd why he was breaking the car's windows. Floyd told her he would pay for the windows if defendant replaced his stereo. Floyd then drove to the McDonald's on 62nd and Western.

Meanwhile, defendant walked outside to look at his car. A man named Tom came over to him and said that he had seen what had happened. Defendant told Tom he was going to look for Floyd. Tom told defendant he should arm himself because one of Floyd's companions, Johnson, had a gun. Tom then gave defendant a black .38-caliber revolver. Defendant put the revolver in the front of his pants and asked a friend for a ride. As they were riding south on Western Avenue, defendant saw Floyd's car parked at the McDonald's.

Defendant entered the restaurant and saw Floyd and his three companions eating at a counter. Defendant walked over to Floyd and asked him to pay for the damage to his car. Defendant testified he heard Floyd say "pop that [expletive]"; Floyd testified that neither he nor any of the other three said those words. Defendant further testified that he saw Riley "flinch" toward his waist and that he saw Floyd drop his right hand down under the counter; Floyd testified none of them was carrying a gun at the McDonald's, nor did any of them reach toward their waists. Defendant testified he was fearful that Riley and Floyd were going to shoot him, so he pulled out the revolver Tom had given him and started shooting. Two shots hit Floyd in the chest and arm, two shots hit Jenkins in the back, and one shot hit Riley in the neck. Johnson was not hit. Defendant left the restaurant, returned the gun to Tom, shaved his head, and went home.

Harry Hill, an off-duty Chicago police officer, pulled into the McDonald's as defendant was coming out. Hill became suspicious because he saw defendant "fidgeting [and] putting something in his waist area." Hill entered the McDonald's and saw Floyd, Riley, and Jenkins lying wounded on the floor. Hill called for an ambulance and spoke with Johnson, who said he was going to contact the victims' relatives about the shooting. Hill testified that he did not see Johnson or any of the other three victims in possession of a gun.

Defendant was arrested around 10:30 p.m. that evening and placed in a lineup. Johnson and Officer Hill separately identified defendant.

Defendant made a statement to Assistant State's Attorney Marcy Giannis in which he admitted to the shooting. Defendant stated his motive for the shooting was to "get them back the same way they have been doing me." Defendant also admitted that while he was in the McDonald's, he never saw any of the victims with a gun, nor did they fire a gun while he shot at them.

The jury convicted defendant of four counts of attempted murder, three counts of aggravated battery with a firearm, and one count of aggravated discharge of a firearm. The trial court merged the firearm convictions into the attempted murder convictions and sentenced defendant to three consecutive 20-year terms of imprisonment for the attempted murders of Floyd, Riley, and Jenkins. The court sentenced defendant to a concurrent 15-year term for the attempted murder of Johnson, the one victim who escaped injury. Defendant filed this timely appeal.

First, defendant argues the trial court erred by giving the jury a single issues instruction for the charge of attempted murder. The instruction stated:

"To sustain the charge of attempt first degree murder, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the killing of Michael Floyd or [Tridell] Riley or Derrick Johnson or James Jenkins; and

*Second*: That the defendant did so with the intent to kill Michael Floyd or [Tridell] Riley, or Derrick Johnson, or James Jenkins; and

*Third*: That the defendant was not justified in using the force which he used."

Defendant argues that the instruction improperly directed the jury to convict him on all four counts of attempted murder even if it found he had attempted to murder only one of the victims. In other words, defendant argues that by lumping all the counts together in a single instruction, the trial court was in effect telling the jury that it need not make a separate determination of guilt with respect to each victim.

Defendant waived this argument by failing to object to the instruction at trial. *People v. Enoch*, 122 Ill. 2d 176 (1988). Even if the issue had not been waived, we would find no reversible error because, in addition to the issues instruction, the court also provided separate verdict forms for each victim, thereby making it clear that the jury should find defendant guilty or not guilty as to each victim separately. For the same reason, we reject defendant's related claim that the trial court erred by giving a single issues instruction for the charge of aggravated battery with a firearm.

*People v. Wilkerson*, 87 Ill. 2d 151 (1981), cited by defendant, does not compel a different result. In *Wilkerson*, the trial court failed to give separate issues instructions for multiple defendants who advanced different defenses. *Wilkerson*, 87 Ill. 2d at 158. The supreme court held that the result was a set of jury instructions so confusing that the jury's verdict could not stand. *Wilkerson*, 87 Ill. 2d at 159. *Wilkerson* is factually inapposite to the present case, which involves a single defendant who argued he acted in self-defense. Unlike *Wilkerson*, separate issues instructions were not needed to alleviate any jury confusion caused by multiple defendants advancing different defenses.

Defendant responds that jury confusion is evident from its decision to convict him of the attempted murder of Derrick Johnson, even though Johnson testified that, after he heard shots at the McDonald's and dropped to the ground, defendant never fired at him. Defendant argues that his conviction of the attempted murder of Johnson shows that the jury "was confused by the improper instructions and reasoned that as long as he was guilty of one count, he was guilty on all counts."

We disagree. The jury heard defendant's statement to Assistant State's Attorney Giannis, in which he admitted to entering the McDonald's and seeing Johnson and the other three victims eating at a counter. Defendant admitted taking out his pistol and shooting "at all of them." Defendant kept shooting until he had expended all the bullets in his gun. He admitted seeing "the fourth guy" (*i.e.*, Johnson) run away unhurt, but did not go after him because he had run out of ammunition. The jury could infer from this evidence that defendant had the specific intent to kill Johnson and had taken a substantial step toward doing so. See *People v. Oaks*, 169 Ill. 2d 409, 457-58 (1996) (when presented with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.) Thus, the verdict of guilty on the count based on the attempted murder of Johnson is not indicative of a confused jury or that the instructions were misleading.

Defendant attempts to liken this case to *People v. Scott*, 243 Ill. App. 3d 167 (1993). In *Scott*, the State charged defendant with delivering controlled substances to undercover police officers on three different occasions. The State tendered six jury forms, one "guilty" and one "not guilty" form for each of the three occasions with which defendant was charged. *Scott*, 243 Ill. App. 3d at 168. The trial court modified those forms to one "guilty" and one "not guilty" form. *Scott*, 243 Ill. App. 3d at 168. The jury returned a guilty verdict of one count of delivery of a controlled substance. *Scott*, 243 Ill. App. 3d at 168. The

appellate court reversed and remanded, finding that the trial court had "engendered the possibility of a unanimous guilty verdict only in the sense that all 12 jurors believed that defendant was guilty of one, but possibly not the same, delivery count." *Scott*, 243 Ill. App. 3d at 169.

*Scott* is clearly inapposite to the present case, in which the trial court gave separate verdict forms for each count. Thus, unlike *Scott*, we know that the jury was unanimous in its finding of guilt with respect to each count of attempted murder. See also *People v. Rand*, 291 Ill. App. 3d 431 (1997) (declining to follow *Scott*).

■ Next, defendant argues the trial court erred by refusing to instruct the jury on the doctrine of transferred intent as it applied to defendant's self-defense claim against Jenkins and Johnson. Under the doctrine of transferred intent, defendant can be convicted of the attempted murder of an unintended victim if he shoots at one person with the intent to kill, but injures another; defendant's intent to kill the intended victim is transferred to the unintended victim. *People v. Burrage*, 269 Ill. App. 3d 67, 76 (1994). Also, defendant can be exonerated of attempted murder if he shoots an assailant in self-defense but injures another; defendant's intent to shoot his assailant in self-defense is transferred to the unintended victim. *People v. Smith*, 94 Ill. App. 3d 969, 973-74 (1981).

Defendant argues that he shot Floyd and Riley in self-defense because he thought they were reaching for weapons; defendant asserts that Jenkins and Johnson, who were sitting with Floyd and Riley at the time, were unintended victims. Defendant contends the court should have instructed the jury to transfer defendant's self-defense intent to the unintended victims, Jenkins and Johnson.

■ Even assuming that the trial court should have given such an instruction, we find no prejudice because the jury rejected defendant's theory of self-defense against Floyd and Riley; thus, there was no self-defense intent to be transferred to defendant's shooting of Jenkins and Johnson. In other words, the giving of a transferred intent instruction would not have altered the jury's verdict finding the defendant guilty of the attempted murder of Jenkins and Johnson.

■ Next, defendant argues the trial court erred by improperly limiting cross-examination of Derrick Johnson on the issue of whether the victims possessed a weapon at the time defendant entered the McDonald's. Johnson testified that after defendant shot his three companions, he went over to Floyd and took his keys to the car so that he could go get help. During cross-examination, the following exchange occurred:

"Q. [Defense Attorney:] And you then left the establishment?

A. [Johnson:] Yes, sir.

Q. In a car?

A. Yes, sir.

Q. And you took something that was in the establishment, didn't you?

A. No, sir.

Q. Didn't you take keys?

A. Yes, sir.

\* \* \*

Q. We only have your word that you didn't take a gun from that area, correct?

MR. MAGATS [Assistant State's Attorney]: Objection. Form.

THE COURT: Sustained. Nothing to show that he did take a gun."

Defendant contends the trial court erred in sustaining the objection and by its comment immediately thereafter. Defendant waived review of this issue by failing to raise it in his posttrial motion. *Enoch*, 122 Ill. 2d at 186.

Even if the issue had not been waived, we would find no error. Floyd, Jenkins, and Johnson testified that none of the victims had a gun. In his statement to Assistant State's Attorney Giannis, defendant admitted he never saw any of the victims with a gun. During his testimony at trial, defendant stated that he saw Floyd and Riley make movements toward their waists, but defendant never testified that he saw a gun. Thus, defense counsel's question ("We only have your word that you didn't take a gun from that area, correct?") assumed a fact not in evidence, *i.e.*, that there was actually a gun for Johnson to remove from the McDonald's. Accordingly, the trial court correctly sustained the assistant State's Attorney's objection.

Defendant argues that the trial court's comment ("Nothing to show that he did take a gun") improperly indicated to the jury that it disbelieved defendant's claim that he shot the victims after seeing Floyd and Riley reach toward their waists. We disagree. The court's comment merely indicated that there was no evidence Johnson had taken a gun from the McDonald's; the comment in no way referred to defendant's theory that he shot the victims because he saw Floyd and Riley reach toward their waists. Accordingly, we find no reversible error. See *People v. Harris*, 123 Ill. 2d 113, 137 (1988) (for a trial judge's comments to constitute reversible error, defendant must demonstrate that the comments constituted a material factor in the conviction or were such that an effect on the jury's verdict was the probable result).

■ Next, defendant argues the trial court erred by preventing him from testifying as to his belief that Floyd had previously fired shots at

his (defendant's) mother's house. Defendant argues that such testimony was relevant to his state of mind and to the reasonableness of his belief that he needed to act in self-defense.

We find no abuse of discretion, as defense counsel laid no foundation as to how or when defendant came by the belief that Floyd had fired shots at his mother's house, nor did he lay a foundation as to when the shots were fired. In the absence of such a foundation, defendant's proposed testimony as to his "belief" that Floyd had fired shots at his mother's house on some unspecified date prior to the shooting at the McDonald's was too remote and speculative to be relevant. See *People v. Rodriguez*, 291 Ill. App. 3d 55, 65 (1997) (the trial court may reject offered evidence as irrelevant if it has little probative value due its remoteness, speculativeness, or uncertainty).

Next, defendant argues the trial court erred by preventing him from testifying that Floyd was a member of a gang. Defendant argues such testimony bore on the reasonableness of his belief that Floyd was likely armed and dangerous at the McDonald's. We find no error, as the record indicates that the court allowed defendant to testify that Floyd was a member of the Gangster Disciples.

■ Next, defendant argues his counsel provided ineffective assistance. To establish a claim of ineffective assistance, defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability counsel's deficient performance prejudiced defendant. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

■ Defendant argues his counsel was ineffective for failing to preserve for appellate review the issues concerning the allegedly flawed jury instructions and the trial court's comment allegedly reflecting its disbelief of defendant's theory of self-defense. As discussed above, we addressed those issues on the merits and found no error therein. Therefore, defendant's ineffective assistance claim fails. See *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991) (court may dispose of ineffective assistance claim on the ground of lack of sufficient prejudice).

Defendant also claims his counsel was ineffective for failing to seek the appointment of a psychological expert to assist in the defense during trial. Defendant claims that such an expert perhaps would have testified that Floyd's prior attacks on defendant and his family affected defendant's mental state at the time of the shooting at the McDonald's. Defendant's argument as to the expert's testimony is entirely speculative and as such does not establish a reasonable probability that the failure to seek the appointment of the expert prejudiced defendant.

Defendant also claims his counsel was ineffective for failing to

present mitigation evidence at the sentencing hearing. We find no ineffective assistance, as defendant fails to detail the evidence that counsel should have presented.

Finally, defendant claims his counsel was ineffective for failing to call witnesses to corroborate defendant's claim that he was told one of the victims possessed a gun. Defendant also argues that counsel should have called witnesses to corroborate defendant's account of Floyd's dangerous character and the nature and extent of Floyd's attacks on defendant and his family. We find no error, as defendant and Floyd both testified to their prior violent confrontations; the jury knew from said testimony that, as a result of their confrontations, defendant considered Floyd and the other victims to be armed and dangerous at the McDonald's. Further witnesses on the same subject would have been merely cumulative. Accordingly, counsel's failure to call other witnesses was not objectively unreasonable, nor did it prejudice defendant.

Defendant argues that the "cumulative effect" of his trial counsel's errors constituted a denial of effective assistance. We disagree. Since counsel was not ineffective in any of the instances alleged individually, he cannot have been ineffective in any cumulative fashion.

■ Next, defendant argues that the mandatory consecutive sentencing statute (730 ILCS 5/5—8—4(a) (West 1992)) under which the trial court sentenced him is unconstitutional. Specifically, defendant contends the statute violates the proportional penalties clause of the Illinois Constitution, which provides that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. Review under the proportionate penalties clause takes three forms. First, the proportionate penalties clause is violated when the punishment for a particular offense is so cruel, degrading, or wholly disproportionate to the offense as to shock the moral sense of the community. *People v. Davis*, 177 Ill. 2d 495, 503 (1997). Second, the proportionate penalties clause is violated when similar offenses are compared and conduct creating a less serious threat to the public health and safety is punished more harshly. *Davis*, 177 Ill. 2d at 503. Third, the proportionate penalties clause is violated when identical offenses are given different sentences. *Davis*, 177 Ill. 2d at 504.

The statutory scheme under which defendant was sentenced mandates consecutive sentences for defendant, who committed multiple Class X felonies (attempted murder) and inflicted severe bodily injury as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. See 730 ILCS 5/5—8—4(a) (West 1992). The statute gives the court discretion to enter concurrent sentences for an offender who commits the

same offenses in separate courses of conduct.[1] See *People v. Bole*, 155 Ill. 2d 188 (1993). Defendant argues that section 5—8—4 violates the proportionate penalties clause in two ways identified by *Davis*: first, conduct creating a less serious threat to the public health and safety (multiple offenses committed in a single course of conduct) is punished more harshly than similar conduct creating a more serious threat (multiple offenses committed in separate courses of conduct); second, identical offenses (attempted murder) are given different sentences.

Defendant contends that "[c]ommon sense would seem to dictate that the greater danger is engendered by offenses occurring during multiple courses of conduct, simply because the opportunity for harm is increased during multiple incidents as opposed to a single incident. Moreover, the offender who forms the specific intent to kill on multiple occasions is more dangerous than one who, like [defendant], formed the intent on a single occasion as a result of prior attacks against his person, property and family."

Defendant's observations are not necessarily true. A shooting spree during a single course of conduct in one crowded McDonald's can potentially cause more injuries and casualties, and thus pose more of a threat to the public health and safety, than shots fired at isolated individuals during separate courses of conduct. Thus, contrary to defendant's argument, section 5—8—4 does not violate the proportionate penalties clause by punishing offenses committed in the same course of conduct more harshly than offenses committed in separate courses of conduct.

Defendant also argues that section 5—8—4 violates the proportionate penalties clause by giving identical offenses (attempted murder) different sentences (mandatory consecutive sentences versus discretionary concurrent sentences.) We disagree. The attempted murders punishable by mandatory consecutive sentences in section 5—8—4(a) are not identical to the attempted murders punishable by concurrent sentences. To impose consecutive sentences under section 5—8—4(a), the trial court must find that the attempted murders were performed in a single course of conduct. To impose concurrent sentences, the trial court must find that the attempted murders were performed in separate courses of conduct. Thus, the crimes punishable by mandatory sentences in section 5—8—4(a) contain a different element than

---

[1]Subsequent to defendant's sentencing, the legislature amended section 5—8—4(b) of the Unified Code of Corrections, eliminating the trial court's discretion to impose concurrent sentences when the enumerated offenses are committed in separate courses of conduct. See 730 ILCS 5/5—8—4(b) (West 1996).

the crimes punishable by concurrent sentences. Accordingly, the differing penalties do not violate the proportionate penalties clause.

*People v. Bole*, 155 Ill. 2d 188 (1993), cited by defendant, is inapposite. The issue in *Bole* was whether section 5—8—4 mandated consecutive sentences regardless of whether the subject offenses occurred in a single course of conduct. *Bole* did not address the issue presented here, whether section 5—8—4 violates the proportionate penalties clause.

■ Next, defendant argues the trial court erred during sentencing when it failed to appoint a psychological expert to evaluate defendant's mental state. Defendant claims that the expert "would have been in a position to evaluate [his] mental state as regards [his] history of being a crime victim himself, as well as [his] possible belief that his safety and the safety of his family were under constant threat by Floyd." We find no abuse of discretion, as the expert's opinion would have related to defendant's mental state at the time of the shootings, which was the precise issue the jury resolved against him. See *People v. Pertz*, 242 Ill. App. 3d 864, 913 (1993). Further, as the trial judge stated when denying the appointment of the expert, he was "well aware of the circumstances" surrounding the case, including defendant's prior altercations with Floyd; the expert simply would have rehashed the same facts.

■ Finally, defendant argues the trial court erred when it sentenced him to a total of 60 years' imprisonment. The trial court read the presentence report and heard the evidence in mitigation and aggravation, including that defendant's conduct caused serious harm (730 ILCS 5/5—5—3.2(a)(1) (West 1996)), that he had a prior conviction for theft from an automobile (730 ILCS 5/5—5—3.2(a)(3) (West 1996)), and that a lengthy sentence was necessary to deter others from committing the same crime (730 ILCS 5/5—5—3.2(a)(7) (West 1996)). The trial court's sentence was within the statutory limits. We find no abuse of discretion. See *People v. Streit*, 142 Ill. 2d 13, 19 (1991) (the trial court has wide discretion in imposing sentences within the statutory limits and its decision will only be disturbed for an abuse of discretion).

For the foregoing reasons, we affirm the trial court.

Affirmed.

GALLAGHER and O'MARA FROSSARD, JJ., concur.