COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Powell and Alston
Argued at Richmond, Virginia


QUINTON S. HILL

                                       MEMORANDUM OPINION[*] BY

v.       Record No. 0186-09-1            JUDGE ROSSIE D. ALSTON, JR.
                                           JUNE 1, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Jessica M. Bulos, Assistant Appellate Defender (Office of the
Appellate Defender, on briefs), for appellant.

Karen Misbach, Assistant Attorney General II (William C.
Mims, Attorney General, on brief), for appellee.


Quinton S. Hill (appellant) appeals from his conviction for maliciously shooting into an

occupied vehicle, in violation of Code § 18.2-154. Appellant contends the evidence is

insufficient to support his conviction because the evidence proved he acted in justifiable

self-defense. For the reasons stated below, we agree with appellant and reverse his conviction.

I. BACKGROUND[1]

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v.

Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "Viewing the record through this

evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of this appeal.

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)).

So viewed, the evidence showed that on February 2, 2008, Shannon Ford (Ford) was driving her car on George Washington Highway in Portsmouth. Thomas Chavis (Chavis) sat in the passenger's seat. As Ford's car approached a stoplight, Chavis told Ford to pull up next to the vehicle stopped in the lane to the right of Ford's vehicle. As Ford pulled up next to the car, she recognized appellant, with whom she was familiar, as the driver of the other car. When the light turned green, Ford accelerated and drove alongside appellant's vehicle. Chavis rolled down the passenger window of Ford's car and asked appellant, "What's up?" Appellant responded, "What's up?"[2] Chavis then fired a shot into appellant's vehicle. In response, appellant shot into Ford's vehicle. Appellant braked, and Ford's car drove away.

At trial, Ford testified that appellant shot into her car, but not until "after the passenger in [her] car shot first." The Commonwealth's evidence showed one bullet hole in the rear passenger side door of Ford's vehicle. At the close of the Commonwealth's case, appellant moved to strike the evidence, arguing that he acted in self-defense. The trial court denied appellant's motion, noting,

> The City of Portsmouth is not the O.K. Corral[,] and just because somebody shoots at you doesn't necessarily mean that you have a right to shoot back. In this case, there is no evidence that Ms. Ford shot at anybody, . . . nor is there any indication that . . . Ms. Ford suggested or in any way condoned or induced the passenger in her car to take shots at the defendant, assuming that that happened.

---

[2] It appears that in the context of these circumstances, the exchange of "What's up" between these individuals was not an exchange of pleasantries.

Appellant then testified. He admitted that he shot at Ford's vehicle, but only because he "was in fear of [his] life." According to appellant, Chavis shot and injured appellant approximately one month before the February 2, 2008 incident.[3] Appellant testified that he recognized Chavis from the previous incident and that when Chavis shot at him on February 2, 2008, appellant applied his brakes and fired one shot back at Chavis to defend himself.

At the close of appellant's evidence, he renewed his motion to strike the evidence, again arguing that the evidence showed he acted in self-defense. The trial court denied the motion, stating, "I think this matter could have been reasonably avoided by simply, you know, slowing down, making a turn, or taking some other steps to get out of there. And [appellant] chose otherwise. And when he chose otherwise, he endangered someone who was no danger to him."

The trial court found appellant guilty of maliciously shooting into an occupied vehicle. This Court granted appellant's petition for appeal.

## II. ANALYSIS

"In its principal application, the doctrine of self-defense, a branch of the broader rule of necessity[,] is a possible defense to charges of unlawful contact ranging from simple assault through murder." John L. Costello, Virginia Criminal Law and Procedure § 33.1[2] (2009). "The common law of Virginia 'has long recognized that a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault.'" Id. (quoting Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989)); see also Jackson v. Commonwealth, 96 Va. 107, 113, 30 S.E. 452, 454 (1898) (recognizing the right of a person who is reasonably apprehended "to repel such assault by all the force he deemed

---

[3] Appellant also testified that Chavis was awaiting trial on charges resulting from the previous shooting and that Chavis was "on the run" when the February 2, 2008 altercation occurred.

necessary, . . . [and to] become the assailant, inflicting bodily wounds until his person was out of danger").

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citing McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." Id. (citing Yarborough v. Commonwealth, 217 Va. 971, 978-79, 234 S.E.2d 286, 292 (1977)). However, "undisputed facts may establish self-defense as a matter of law." Lynn v. Commonwealth, 27 Va. App. 336, 353, 499 S.E.2d 1, 9 (1998) (citing Hensley v. Commonwealth, 161 Va. 1033, 170 S.E. 568 (1933)). If a self-defense claim is proved, the accused is entitled to an acquittal. Id. (citing Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958)).

The trial court convicted appellant of maliciously shooting into an occupied vehicle, pursuant to Code § 18.2-154. Code § 18.2-154 states, in pertinent part, "any person who maliciously shoots at . . . any motor vehicle or other vehicles when occupied by one or more persons, whereby the life of any person . . . in such motor vehicle or other vehicle, may be put in peril, is guilty of a Class 4 felony." Appellant contends the evidence was insufficient to convict him of malicious shooting because the evidence showed he acted in justifiable self-defense and, therefore, he did not possess the requisite intent to commit the charged offense. Specifically, appellant argues the trial court erred as a matter of law (1) in finding that he could have avoided this incident by slowing down, turning, or taking other steps to drive away from Ford's vehicle, and (2) in concluding appellant's claim of self-defense did not apply to Ford, an innocent bystander. We address each of these arguments in turn.

- 4 -

A. Duty to Retreat

"In Virginia, . . . self-defense is classified either as justifiable or excusable." Foote v. Commonwealth, 11 Va. App. 61, 67, 396 S.E.2d 851, 855 (1990). The Supreme Court of Virginia has long-recognized the distinction between "justifiable" and "excusable" self-defense and its effect on a defendant's duty to retreat.

> The rule may be briefly stated thus: If the accused is in no fault whatever, but in the discharge of a lawful act, *he need not retreat*, but may repel force by force, *if need be*, to the extent of slaying his adversary. This is *justifiable* homicide in self-defense. But if a sudden fight is brought on, without malice or intention, the accused, if in fault, *must retreat as far as he safely can*, but, having done so and in good faith abandoned the fight, may kill his adversary, if he cannot in any other way preserve his life or save himself from great bodily harm. Vaiden's Case, 53 Va. (12 Gratt.) 717, 729 (1855).

McCoy v. Commonwealth, 125 Va. 771, 776, 99 S.E. 644, 646 (1919) (quoting 6 Va. Law Reg. 177).

"Justifiable self-defense arises when the defendant is completely without fault." Foote, 11 Va. App. at 67, 396 S.E.2d at 855 (citing Perkins v. Commonwealth, 186 Va. 867, 876, 44 S.E.2d 426, 430 (1947)). "In such a case, the defendant need not retreat, but is permitted to stand his ground and repel the attack by force, including deadly force, if it is necessary." Id. (citing McCoy, 125 Va. at 775, 99 S.E. at 645). Even so, the "amount of force used must be reasonable in relation to the harm threatened." Diffendal, 8 Va. App. at 421, 382 S.E.2d at 26 (citing Montgomery v. Commonwealth, 98 Va. 840, 844, 36 S.E. 371, 373 (1900)).

In Foote, a plain-clothed police officer approached the defendant in his vehicle and attempted to unlawfully arrest him. 11 Va. App. at 63, 396 S.E.2d at 853. The officer drew his weapon, pointed it at the defendant, and attempted to remove the defendant's keys from the vehicle's ignition. Id. When the defendant fled in his vehicle, the officer followed the defendant

in his own unmarked police car.  Id. at 63-64, 396 S.E.2d at 853.  The defendant then stopped his car, exited the vehicle holding a handgun, and ran toward the officer with his weapon drawn.  Id. at 64, 396 S.E.2d at 853.  When the officer fired his weapon at the defendant, the defendant fired back.  Id.  This Court held, the defendant "had the privilege to use reasonable force in repelling his attacker" because the defendant was not the initial aggressor and was entirely without fault in provoking the officer's unlawful attack.  Id. at 69, 396 S.E.2d at 856.  "[The defendant] had the right to stand his ground and his initial flight in no way diminishes this right."  Id. at 68-69, 396 S.E.2d at 856.  Further, as the defendant "was confronted with deadly force, it was reasonable under the circumstances for him to use deadly force in return."  Id. at 69, 396 S.E.2d at 856.

Here, like in Foote, the undisputed evidence showed that appellant was entirely without fault in the initiation of the attack.  Both appellant and Ford testified that appellant fired one shot only *after* Chavis fired at least one shot at or into appellant's vehicle.  As there was no evidence presented to suggest appellant took any part in provoking the attack, there was no obligation upon appellant to retreat.  Id. at 67, 396 S.E.2d at 855; accord McCoy, 125 Va. at 776, 99 S.E. at 646.  Accordingly, the trial court erred in rejecting appellant's self-defense claim based on its finding that appellant could have taken other steps to retreat.

Because appellant acted in justifiable self-defense, he was permitted to repel the attack by reasonable force.  Foote, 11 Va. App. at 67, 396 S.E.2d at 855; accord McCoy, 125 Va. at 776, 99 S.E. at 646.

> A person only has the privilege to exercise reasonable force to repel the assault.  "The privilege to use such force is limited by the equally well recognized rule that a person shall not, except in extreme cases, endanger human life or do great bodily harm. . . . [T]he amount of force used must be reasonable in relation to the harm threatened."

Foote, 11 Va. App. at 69, 396 S.E.2d at 856 (quoting Diffendal, 8 Va. App. at 421, 382 S.E.2d at 26) (internal quotations omitted).  "The law of self-defense is the law of necessity . . . .

- 6 -

Accordingly, a defendant must reasonably fear death or serious bodily harm to himself at the hands of his victim." McGhee, 219 Va. at 562, 248 S.E.2d at 810. "Whether the danger facing the accused is 'reasonably apparent' is determined from the viewpoint of the accused at the time [of the shooting]." Smith, 17 Va. App. at 71, 435 S.E.2d at 416-17 (quoting McGhee, 219 Va. at 562, 248 S.E.2d at 810).

The uncontroverted evidence was that Chavis shot and injured appellant one month prior to the February 2, 2008 incident and that at the time of the instant offense, Chavis was awaiting trial on charges resulting from the earlier shooting. Thus, it was certainly reasonable for appellant to believe Chavis intended to injure or kill appellant and that Chavis would not voluntarily cease his attack. Further, the Commonwealth's evidence corroborated appellant's account of the incident in that appellant fired only one shot in response to Chavis's attack. Under the circumstances, appellant's act of firing one shot at Ford's vehicle was a reasonable response to the harm posed by Chavis's attack.

In assessing the principles directing our resolution of the matter, we appreciate the learned trial judge's concern about the societal circumstances associated with open gunfire taking place in the City of Portsmouth. We absolutely agree that the City of Portsmouth should not provide a modern-day backdrop to the shootout at the O.K. Corral. In fact, this case provides an interesting historical parallel to the O.K. Corral conflict, as Judge Wells Spicer, at the preliminary hearings of the murder charges against Wyatt Earp, Morgan Earp, James Earp, and Doc Holliday, was asked to decide whether the Earps and Holliday were justified in their use of deadly force against their alleged victims.

Judge Spicer concluded,

> [W]hen we consider the conditions of affairs incident to a frontier country; the lawlessness and disregard for human life; the existence of a law-defying element in [our] midst; the fear and feeling of insecurity that has existed; the supposed prevalence of

- 7 -

> bad, desperate and reckless men who have been a terror to the country and kept away capital and enterprise; and consider the many threats that have been made against the Earps, I can attach no criminality to his unwise act.

The O.K. Corral Inquest (Alford E. Turner, ed., Early West 1992) (1981).

While the City of Portsmouth is not frontier country, the lawlessness of the actions of Chavis and the threats and actual harm perpetrated against appellant by Chavis lead us to the conclusion that it would be inappropriate to attach criminality to appellant's actions under the circumstances of this case.

### B. Innocent Bystander

Appellant further contends the trial court erred in finding that even if appellant was justified in his actions toward Chavis, Chavis's attack did not justify appellant's use of force against Ford, an innocent bystander. As this presents a mixed question of law and fact, "[w]e review the trial court's legal conclusions *de novo* while giving deference to the trial court's findings of fact unless the findings are 'plainly wrong or without evidence to support them.'" Carter v. Commonwealth, 42 Va. App. 681, 686, 594 S.E.2d 284, 287 (2004) (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 235-36 (1998)). Given this standard of review, we are bound to accept the trial court's characterization of Ford as an innocent bystander, but we are not required to accept the court's legal conclusion that appellant's intent to defend himself against Chavis did not transfer to Ford.

We have long recognized the concept of transferred intent. "Under this concept, if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional." Riddick v. Commonwealth, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983) (citing Jones v. Commonwealth, 217 Va. 231, 236, 228 S.E.2d 127, 130 (1976); Williams v. Commonwealth, 128 Va. 698, 717, 104 S.E. 853, 859 (1920)). This concept

- 8 -

extends to any act of violence committed against an unintended victim. Blow v. Commonwealth, 52 Va. App. 533, 541, 665 S.E.2d 254, 258 (2008) ("The doctrine of transferred intent permits a fact finder to transpose a defendant's criminal intent to harm an intended victim to another unintended, but harmed, victim."); see also Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989) (affirming the defendant's conviction for malicious wounding where the evidence showed the defendant commanded his dog to kill one person, but the dog attacked someone else).

In Riddick, the defendant was engaged in a gun battle with several individuals, resulting in the death of an innocent bystander. 226 Va. at 246, 308 S.E.2d at 118. The evidence showed that either the defendant or his co-participant fired the fatal shot. Id. at 247, 308 S.E.2d at 118. The defendant argued that he could not be convicted of second-degree murder because the Commonwealth failed to prove he fired the shot that ultimately killed the victim. Id. Affirming the defendant's conviction, the Court held,

> [W]hether [the] defendant or [his co-participant] actually fired the shot that killed the victim is unimportant. If [the] defendant fired the fatal shot, the doctrine of transferred intent applies. . . . If, however, [his co-participant] fired the fatal shot, [the] defendant's conviction is still valid. . . . [The co-participant's] intent was transferred to the slaying of [the victim]. Due to the concert of action, [the] defendant is deemed to have shared [the co-participant's] intent.

Id. at 248, 308 S.E.2d at 119. Further, the Court approved the trial court's use of the following jury instruction:

> "If you believe from the evidence that two or more men were shooting guns in mutual combat with the intent to kill and as a result of these shootings the deceased, an innocent bystander, was killed, then each is responsible for the death of the same as if he had killed the person he intended to kill, *unless he was acting in self defense*."

Id. at 249, 308 S.E.2d at 119 (emphasis added).[4] Rejecting the defendant's contention that this removed from the jury the critical decision regarding whether the defendant had the intent to kill or was acting in self-defense, the Court noted,

> [T]he instruction merely informed the jury that the party who unlawfully provoked the incident which led to [the innocent bystander's] slaying was criminally responsible for the murder, subject to the applicability of the principles of self-defense. *If the person committing the homicide acted in self-defense, then he would not be legally responsible for the death.*

Id. at 249-50, 308 S.E.2d at 120 (emphasis added).

While Riddick is not dispositive, given its facts and the Supreme Court's limited holding, we find its logic and its ultimate reliance on the statement, "If the person committing the homicide acted in self-defense, then he would not be legally responsible for the [injury to the innocent bystander]," analytically viable as applied to the instant case. It cannot be contested that had appellant injured Ford in his attempt to ward off Chavis, appellant's intent to injure Chavis transferred to Ford. Id. at 248, 308 S.E.2d at 119. In this case, we see no reason, and the Commonwealth has presented none, to warrant a refusal to apply the principle of transferred intent simply because appellant's intent was to lawfully defend himself. On the contrary, "the law of self-defense is the law of necessity," McGhee, 219 Va. at 562, 248 S.E.2d at 810, and where it was necessary for appellant to defend himself by deadly force, and the exercise of that force was reasonable, he is not criminally responsible for the ultimate injury, whether that be to the intended victim or someone else. Riddick, 226 Va. at 250, 308 S.E.2d at 120.

Courts in many other jurisdictions have recognized the wisdom inherent in the principle of "transferred intent self-defense." See Holloman v. State, 51 P.3d 214, 221 (Wyo. 2002)

---

[4] The Supreme Court of Virginia limited its holding, noting "Without necessarily giving blanket approval to this instruction for use in every case of this type, we conclude the trial court properly rejected defendant's . . . objection to the instruction, under the facts of this case." Riddick, 226 Va. at 249, 308 S.E.2d at 120.

(adopting the "general rule . . . that if a person acting in necessary self-defense unintentionally injures or kills a third person, he is not guilty of homicide or assault and battery"); Brown v. State, 94 So. 874, 874 (Fla. 1922) (recognizing that "if the killing of the party intended to be killed would . . . have been excusable or justifiable homicide upon the theory of self-defense, then the unintended killing of a bystander, . . . is also excusable or justifiable"); accord Nelson v. State, 853 So.2d 563, 565 (Fla. Dist. Ct. App. 2003). See also People v. Conley, 713 N.E.2d 131, 136 (Ill. App. Ct. 1999) (noting, the "defendant's intent to shoot his assailant in self-defense is transferred to the unintended victim"); State v. Arrellano, 736 S.W.2d 432, 434 (Mo. Ct. App. 1987) (finding that "[i]f the assault upon the bystander was committed in self-defense against an attack by the intended victim, self-defense furnishes a defense against a charge of assault upon the bystander").

As discussed above, appellant's actions were justified and reasonable under the circumstances. Therefore, the trial court erred in rejecting appellant's affirmative defense as it applied to the initial aggressor and to the innocent bystander. Accordingly, appellant lacked the requisite intent to commit a malicious shooting in violation of Code § 18.2-154, and he is therefore, entitled to an acquittal. Bailey, 200 Va. at 96, 104 S.E.2d at 31; Lynn, 27 Va. App. at 353, 499 S.E.2d at 9.

### III. CONCLUSION

For the foregoing reasons, we conclude the evidence showed that appellant acted in justifiable self-defense. Accordingly, the evidence was insufficient to prove appellant maliciously shot into an occupied vehicle.

Reversed and dismissed.